JOSEPH W. OLIVER v. HARFORD J. PERKINS AND WILLIS J. PERKINS.

*Action on the case—Pleading—Breach of contract—Loss of profits —Damages.*

1. The contract, the substance of which is set forth in the opinion, cannot be construed as creating partnership relations between the parties.

2. A series of wrongful acts, all aimed at a single result and contributing to the injury complained of, to wit, the destruction of one's business, credit, and reputation, may be counted upon collectively, as producing that result, in an action on the case.

3. A fraud upon one's rights is actionable as such, notwithstanding those rights may depend in a measure upon contract relations between the same parties.

4. An act innocent and lawful in itself becomes tortious when associated with tortious conduct in a scheme to accomplish an unlawful purpose, and there is no reason why the same rule should not apply to conduct which operates as a breach of a contract.

5. A party cannot be allowed to use a violation of contract obligations as an instrument of oppression to accomplish an ulterior purpose, and then plead the contract as a limitation of his liability.

6. Words spoken or written, injurious to a person in his business, and false and malicious, are actionable *per se*, and special damages need not be proved; citing *Manufacturing Co. v. Perkins*, 78 Mich. 1; *Weiss v. Whittemore*, 28 Id. 366.

7. Where in an action on the case involving the wrongful breach of a contract for the manufacture by the defendants of certain machines, to be sold by the plaintiff at a price fixed by the defendants, with an agreed discount therefrom to the plaintiff on machines sold, it appears that a large number of orders for machines were on hand and unfilled at the time of the breach, and a number were received after that date, and that neither the expense of the then growing business nor the amount realized for the machines was a matter of uncertainty, and that it was not improbable that the sales for the period to which the court limited the inquiry would at least equal

the average sales for a given time preceding the breach, the defendants cannot complain of an instruction that the jury might allow the plaintiff as damages the profits of the business for the time that would elapse after the breach and before the contract could be legally terminated, and base their estimate upon the actual average profits for the 10 months preceding the breach.

Error to superior court of Grand Rapids. (Burlingame, J.) Argued January 13, 1892. Decided June 17, 1892.

Case. Defendants bring error. Affirmed. The facts are stated in the opinion.

*FitzGerald & Barry* (*Francis A. Stace* and *Charles Chandler*, of counsel), for appellants, contended:

1. The forcible removal of plaintiff's books from his office, and their detention, if a fact as alleged, was trespass *de bonis* pure and simple, and has no relation whatever to the contract relations of the parties.

2. The claim that defendants prevented and restrained plaintiff from carrying on his business, without stating in what, is insufficient to base any claim for damages upon; citing *Du Brutz v. Jessup*, 70 Cal. 75.

3. If it be true, as alleged, that defendants refused to continue to manufacture machines for plaintiff, or to supply him with machines, and refused to supply machines to fill orders taken by plaintiff, a remedy is provided in the contract, namely, the right of plaintiff to have the machines manufactured elsewhere, and it is not claimed that he could not have done so at as reasonable rates as those provided for in the contract; citing *Lumber Co. v. Insurance Co.*, 80 Mich. 116, 119, and cases cited on page 121; *Hostetter v. Pittsburgh*, 107 Penn. St. 419, 432; *Navigation Co. v. Fenlon*, 4 Watts & S. 205, 210; *Construction Co. v. Stout*, 8 Colo. 62, 65; *U. S. v. Robeson*, 9 Pet. 327; *Fox v. Railroad Co.*, 3 Wall. Jr. 243, 244; *Canal Co. v. Coal Co.*, 50 N. Y. 250, 258.

4. The mere breach of a contract can never be sued for as a tort, the action being *ex contractu;* and, moreover, no damages being alleged because of defendants' alleged breach of the contract in engaging in the business of selling machines without plaintiff's consent, and selling a large number, no cause of action is shown; citing 1 Chit. Pl. (16th Amer. ed.) *411.

5. Special damage is an essential element in an action for slander to title to do a specific business, and must be specially alleged and proved as laid; citing *Wren v. Weild*, L. R. 4 Q. B., 730, 734; *Malachy v. Soper*, 3 Bing. N. Cas. 371, 381; *Wilson v. Dubois*, 35 Minn. 471; and the declaration must show in what way special damages resulted; citing *Cook v. Cook*, 100 Mass. 194; *Wilson v. Dubois*, 35 Minn. 471; and the particular business in question was an illegal one for the plaintiff to engage in after the termination of the contract, as it was the sale of a patented article, and no action can be maintained for publishing the fact that plaintiff had no right to continue it; citing *Manning v. Clement*, 7 Bing. 362.

6. Giving the broadest latitude to this declaration, plaintiff could only recover damages thereon for the loss and delay in collecting the accounts on his books, the loss of profits on sales made and those contracted for; loss of prospective profits being too uncertain and speculative to afford a basis for damages; citing *McKinnon v. McEwan*, 48 Mich. 106; *Petrie v. Lane*, 58 Id. 528.

7. There is no evidence tending to connect Harford J. Perkins with any of the alleged wrongful acts, or to show his knowledge thereof, and the fact that he was a member of the firm, and as such one of the parties to the contract, cannot make him liable for the tortious acts of his partner, even though done in the firm name, and as to said defendant a verdict of not guilty should have been directed; citing *Gilbert v. Emmons*, 42 Ill. 143, 146; *Grund v. Van Vleck*, 69 Id. 478, 480; *Rosenkrans v. Barker*, 115 Id. 331; *Petrie v. Lamont*, Car. & Marsh. 93; *Woodling v. Knickerbocker*, 31 Minn. 268, 270; Pars. Part. 151, and note; Bates, Part. § 467.

8. Acts of one of the parties in violation of or inconsistent with the provisions of a contract entitle the other party to put an end to the contract; citing *Axle Co. v. Scofield*, 85 Mich. 177, 184; *Bush v. Brooks*, 70 Id. 446, 461; *Planche v. Colburn*, 8 Bing. 14; *Withers v. Reynolds*, 2 Barn. & Adol. 882; *Dwinel v. Howard*, 30 Me. 258; *Preble v. Bottom*, 27 Vt. 249, 251; *Burton v. Pinkerton*, L. R. 2 Exch. 340; *Reybold v. Voorhees*, 30 Penn. St. 116, 121; and the violation of a contract in any material matter by one party justifies the other party in putting an end thereto at once; citing *Child v. Manufacturing Co.*, 72 Mich. 623; *Hannay v. Zerban*, 8 N. Y. Supp. 97; and, if defendants had good ground for putting an end to the contract, the actual motive for so doing is immaterial; citing *Ridgway v. Hungerford Market Co.*, 3 Adol. & El. 171; *Spotswood v. Barrow*, 5 Exch. 110.

9. It is, however, claimed that the defendants had no right to terminate the contract until the expiration of the six-months notice provided for therein; but the entire contract must be construed together (*Manufacturing Co. v. Ellis*, 68 Mich. 101, 103; *Newton v. McKay*, 29 Id. 1; *Vary v. Shea*, 36 Id. 388), and section 16 thereof provides that defendants shall have the right, for any of the causes stated in section 20, to take the selling business in their own hands at once; and the contract will also be construed with reference to the general law affecting it; citing *Grand Lodge v. Child*, 70 Mich. 163, 171; and it must be so construed as to protect the party acting in good faith, and not to allow a wrong-doer to obtain an improper advantage; citing *Hannay v. Zerban*, 8 N. Y. Supp. 97.

10. The occupation of the office room, or "desk-room," as called in the contract, was a mere incident to the contract relation, and as soon as it ceased plaintiff was bound to remove at once, without notice; citing *Kerrains v. People*, 60 N. Y. 221; Wood,·Land. & Ten. § 20.

*Drury & Wolcott*, for plaintiff, contended for the doctrine of the opinion.

McGRATH, J. Defendants are manufacturers of machinery at Grand Rapids, as copartners under the name and style of Perkins & Co. December 10, 1888, defendants entered into a written contract with plaintiff, relating to the sale of a mitre-cutting machine and a dado head and other novelties, by the terms whereof Perkins & Co. agree to originate and perfect the machines. It provides that the patents shall be taken out in the name of Willis J. Perkins, and the title thereto shall vest in him; that the privilege of manufacture shall vest in defendants, but that no royalty shall be paid by plaintiff, except as therein provided; that plaintiff agrees not to divulge or take advantage of any mechanical secrets that he may come in possession of while in communication with defendants or their employés or on the premises of defendants; that defendants will manufacture, or cause to be manufactured, a sufficient number of such machines,

as hereinbefore mentioned, as shall be required to meet the demands created by plaintiff, and, if the defendants shall fail to meet the demands for such machines as are to be built under this agreement, as created by plaintiff, within a reasonable time allowed for their manufacture by defendants, then plaintiff shall be entitled to have said machines manufactured at any other place that may be agreeable to him; that, in case it may become necessary to have machines manufactured elsewhere, plaintiff is to pay to Willis J. Perkins 10 per cent. of the gross valuation of the articles; that defendants shall not sell or cause to be sold any machines manufactured under this contract, except by and with the consent and approval of plaintiff, and that they shall turn over to plaintiff all moneys received on the sale of such machines, except as therein provided; that defendants are to establish the prices of the goods; that defendants are to discount to plaintiff the sum of 40 per cent. from the gross valuation of the selling price of the goods manufactured under this contract in the monthly rendering of bills for such goods as may have been shipped from the factory of the defendants by the plaintiff, or by his order, during the month preceding such settlement, that all bills shall be rendered by defendants to the plaintiff on the first day of each month for all shipments made during the preceding month, and that settlement shall be made therefor by the plaintiff to the defendants by giving his note at 30 days from such date, as per statement rendered by the defendants; that plaintiff shall turn over to or keep on deposit with defendants a sufficient amount of notes or personal accounts, that shall be received in payment for goods sold under this contract, to satisfy as collateral security the defendants for monthly indebtedness for goods shipped under this contract; that defendants are delegated, in the absence of plaintiff from the city, to

open all letters addressed to the Grand Rapids Machinery Company, and indorse for collection all checks or drafts mailed to said company for the payment of goods sold under this contract, as per directions given, also to appropriate from monthly collections for monthly settlements the sum of 85 per cent. of such settlements, as heretofore provided, that shall be rendered under this contract for goods shipped, balance of said bill to be settled for after personal examination by plaintiff of statement rendered by defendants; that all expenses of selling and collecting are to be settled by the plaintiff; that delivery of the goods shall be treated as completed when the goods are boxed and stored in defendants' warerooms; that there shall be no accumulation of stock, except by mutual consent; that, if the normal amount of trade as established by the plaintiff shall drop off, through lack of effort on his part to maintain it up to its maximum condition, or for any of the reasons assigned in section 20 therein, defendants shall be entitled to the privilege of prosecuting such trade in their own behalf, in such manner as they may deem suitable; that defendants shall supply to plaintiff desk room for the transaction of business pertaining to the machinery manufactured under this contract, also the use of the telephone and of Bradstreet's Commercial Agency, without charge, except that plaintiff shall pay for all special reports obtained through Bradstreet's Agency the sums that are charged by said agency for such reports; that plaintiff agrees not to employ or retain as office help in the office of defendants any person who is obnoxious to the defendants; that, if defendants do not succeed in producing a machine satisfactory to plaintiff, then this agreement shall be void; that plaintiff further agrees to consider carefully all designs of the machines which shall be built under this contract, which shall be submitted to him by defend-

ants, and shall give his opinion relative to their worth or deficiency as pertaining to the use for which they are designed, before said machines are constructed; that the existence of this contract may be terminated by either party on six months' notice, for the following reasons, viz.: For frauds perpetrated by either party, non-compliance with the terms of this contract or violation thereof, for non-payment or non-attention to accounts when maturing, and for bad workmanship; that said defendants shall pay the freight on goods returned by reason of faulty construction, and shall repair, without charge, such machines; that, in case of any patent litigation respecting said machines, the expenses shall be borne equally; that said plaintiff shall transact all business under the contract in the name of the Grand Rapids Machinery Company.

The business was entered upon and conducted under this contract until November 17, 1890.

Plaintiff declares in an action on the case. The declaration sets out the contract; that, in accordance with its terms, plaintiff had entered upon it, and had built up a large and lucrative business under it, and had expended certain moneys in building it up; that he had performed its terms and conditions properly; that it was the duty of defendants to perform its terms and conditions; yet that defendants, disregarding their duties and obligations under said contract, on November 17, 1890, contriving and maliciously intending to harm, injure, and prejudice the said plaintiff in his good name and credit, and to harm, injure, and destroy his said business of selling said machines, and to take away and destroy his revenues and profits arising and accruing to said plaintiff from his said business, so as aforesaid carried on and continued under the name and style of Grand Rapids Machinery Company, and to take away and destroy the revenue and

profit that should arise and accrue to the said plaintiff in the future prosecution of said business, wrongfully entered in and upon the premises and office of said plaintiff, and then and there wrongfully carried away and removed from said office, during the absence of said plaintiff, of the chattels and personal property of the plaintiff, his books of account, a large number of orders not yet filled, his shipping book, several books of bills of lading, and other books, papers, and receipts and vouchers, which books of account contained good collectible accounts amounting to $2,500 against divers persons, belonging to plaintiff, which said goods and chattels defendants have concealed and retained and have wholly refused to deliver up; that defendants then and there wrongfully prevented plaintiff from carrying on his business, and refused to continue said business, or to supply plaintiff with machines to fill orders already taken, and defendants thereafter entered upon and engaged in manufacturing and selling said machines to other persons without plaintiff's consent. And said defendants then and there, wrongfully and without notice or legal proceedings, expelled and ejected the said plaintiff from his office in the said city of Grand Rapids, and removed all of said plaintiff's office furniture from his said office, and placed the same in the street, and thereafter refused to admit and allow the said plaintiff to enter his said office; and then and there wrongfully wholly refused to allow, and have hitherto prevented, the said plaintiff from further prosecuting his said business of selling said machines; and then and there wrongfully gave out and published to the business public, and to all the customers of the said plaintiff in said business, and to the commercial agencies of the Bradstreet Company and R. G. Dun & Co., that the said Grand Rapids Machinery Company and said plaintiff have no right, title, or inter-

est in said machines and in the business of selling the same, and that the said defendants would hereafter exclusively handle them; and then and there wrongfully notified all parties from whom plaintiff had obtained orders for said machines that they should cancel their said orders, and send new orders to the said defendants; and then and there wrongfully procured new orders to be placed with said defendants; and wrongfully and falsely gave out and published through the commercial agencies of the Bradstreet Company and R. G. Dun & Co., to the business public and to the customers of said plaintiff, that said Grand Rapids Machinery Company had been succeeded to in its business by the defendants; and wrongfully and falsely gave out and published to the business customers of said plaintiff that said Grand Rapids Machinery Company and said plaintiff were financially irresponsible; and wrongfully and maliciously forbade the postmaster at the said city of Grand Rapids to deliver to the said plaintiff or to his order, or allow the said plaintiff to see, the mail matter and letters arriving at said post-office, and directed to said Grand Rapids Machinery Company, or to the plaintiff as proprietor; and wrongfully notified the several railroads delivering freight at said city of Grand Rapids not to deliver to said plaintiff any freight consigned to the said Grand Rapids Machinery Company, or to said plaintiff or his order.

To this declaration defendants pleaded the general issue.

A few observations as to the contract itself will make it unnecessary to discuss some of the allegations of error. The instrument cannot be construed as creating partnership relations. The machines were to be manufactured by defendants, and the price fixed by them. They were to sell them to plaintiff at a discount from those prices of 40 per cent. Plaintiff was to pay all expenses of sale

and collection, and was to pay the price fixed, less the discount, irrespective of his ability to collect from his customers. Up to the point when the machines were boxed and placed in the warehouse, plaintiff shared none of the expenses or risks. After that time, defendants shared none of the expenses or risks. Plaintiff, under the contract, was more than a mere salesman. He was a purchaser and dealer, exempted from the payment of royalty as such. Defendants were to manufacture to meet the demands created by him. The machines were to be manufactured to his satisfaction; and, if defendants did not meet plaintiff's demands, he was to be at liberty to get them manufactured elsewhere. Plaintiff was to deposit with defendants a sufficient amount of his accounts against his customers, or the notes of his customers, as collateral. The notes taken from customers and the accounts against customers were his notes and accounts, the orders taken were his orders, the business was his business, and the books kept by him in and about that business were his books, and the office furniture his furniture. The defendants were, under the contract, to furnish plaintiff with desk room, and, under the subsequent arrangements made, providing plaintiff with an office, that office was his office, at least to the extent that he was entitled to keep his office furniture, books, papers, and chattels therein, until his rights under the contract were terminated in a proper manner, and he was entitled to access to said office and books and papers.

Several of the assignments of error relate to the declaration. Defendants make a classification of the several acts complained of into (a) acts constituting a breach of contract; (b) acts amounting to a trespass; and (c) acts which were slanderous; and insist that there is a misjoinder of actions. The acts complained of in

the declaration are the breach of the contract; the placing of the office effects of plaintiff in the street; the refusal to permit him to enter what had been his office; the taking and retention of the orders received, together with his books and papers; the attempt to interfere with his mail and freight; and the sending out of the circulars and letters to his customers, informing them that defendants had succeeded to his business, and that he was financially irresponsible. It is charged that these acts were done with the intention to crush, ruin, and destroy the said plaintiff, and deprive him of his said business, and to injure and destroy his credit and business reputation, and that, by reason thereof, he has been and is greatly injured and damaged in his credit and reputation, and in his said business, and that his said business of selling said machines has been wholly broken up and destroyed, and that he has been wholly prevented and hindered from collecting debts due to him in said business, and that the same have been lost to him, and that he has been and is wholly prevented and hindered from receiving and acquiring the profits and emoluments of said business, both from sales already heretofore made and from sales already heretofore contracted for, and also the profits and emoluments likely to accrue to the plaintiff from the future prosecution of said business; and also, by reason of and by means of the said premises, he, said plaintiff, has been and is otherwise greatly injured and damnified in his said business, and in his credit, and in his good name and reputation.

This is not a question as to whether a count in *assumpsit*, one in trespass, and one in case for slander may be joined in one declaration, but the question is whether a series of wrongful acts, all aimed at a single result and contributing to the injury complained of, to wit, the destruction of one's business, his credit, and his

reputation, and counted upon, not severally, but collectively, as producing that result, must be segregated, and made the basis of separate actions. No special damage is set up by reason of the commission of any one of the several acts charged. It is not alleged that plaintiff's office effects, books, or papers were injured, or that plaintiff suffered any distinct injury by being deprived of the possession of his office. The complaint is that by reason of this series of acts his business was interrupted and destroyed, and his business credit and reputation injured. The fact that in alleging how he was prevented from carrying on his business, viz., by being denied access to his office and to his books, he set up a state of facts that, standing alone, might constitute a trespass, does not exclude their relation in an action of case brought to compensate the plaintiff for an injury which did not result from that act alone, but from a series of acts, of which the act constituting a trespass was one. Case for the malicious suing out of a writ of attachment may involve an entry, levy, and seizure. In case for an assault and battery plaintiff might prove that defendant entered upon plaintiff's premises, and struck and otherwise beat and bruised him. The damages in the present case, arising from the destruction of plaintiff's business, do not admit of apportionment as between the several acts complained of. So far, then, as the acts done with a common intent and purpose contributed to the same result, they, too, were incapable of severance.

Nor is the question here whether a mere breach of contract can be sued in tort. This was more than a mere breach. The ordinary breach of contract is by an act of omission. It is true that the wrongful acts of defendants operated as a breach, but that was not so much by a refusal to perform some condition of the contract, but rather by taking it out of the power of

plaintiff to perform, and by rendering him powerless to do what the contract provided that he might do, in case of failure on defendants' part. It amounted not only to a failure to manufacture and supply machines as the demand therefor was created by plaintiff, but defendants seized upon orders already procured by plaintiff, took possession of his books, denied him access to books or office, and advertised themselves as the successors to the business and plaintiff as irresponsible. In other words, they appropriated his established business, took possession of the orders already secured, and took away from him the ability to secure further orders or to create further demands. Plaintiff's business could have been carried on in spite of an ordinary breach of the contract on the part of the defendants,—an omission or failure by them, —and still plaintiff might have been within the provisions of the contract; but by defendants' wrongful acts he was deprived of the power to continue the business, whether he was guilty of a breach or not. If third parties had ejected plaintiff from his office, seized upon his orders and his books, interfered with his mail and freight, written to his customers that they had succeeded to his business and that he was irresponsible, and thereby destroyed his business, is there any doubt that such parties would have been liable in tort? The fact that defendants were under contract relations with plaintiff, whereby they could more effectually accomplish the result, does not make the conduct less tortious, protect them from liability for the same conduct, or limit the remedy to an action on the contract; neither does it exclude considerations arising out of the existence of the contract or conduct under it in the same line calculated to produce the same result. It is not even necessary to invoke the rule that an action as for a tort, or an action as for a breach of contract, may be brought by the same

party on the same state of facts. Cooley, Torts, *90. Here acts were done, proof of which would have been inadmissible under an action upon the contract. Here the conduct was alleged to be aggressive, without the contract, malicious, designed to oust plaintiff summarily from his business, and to appropriate that business to themselves.

The present case is clearly within the rule of *Rich v. Railroad Co.*, 87 N. Y. 382, cited by Mr. Cooley. After discussing that class of cases where there is a duty growing out of established relations, the court in that case say:

"It may be granted that an omission to perform a contract obligation is never a tort, unless that omission is also an omission of a legal duty. But such legal duty may arise, not merely out of certain relations of trust and confidence, inherent in the nature of the contract itself, but may spring from extraneous circumstances, not constituting elements of the contract as such, although connected with and dependent upon it, and born of that wider range of legal duty, which is due from every man to his fellow, to respect his rights of property and person, and refrain from invading them by force or fraud. It has been well said that the liability to make reparation for an injury rests not upon the consideration of any reciprocal obligation, but upon an original moral duty enjoined upon every person so to conduct himself or exercise his own rights as not to injure another. Whatever its origin, such legal duty is uniformly recognized, and has been constantly applied as the foundation of actions for wrongs; and it rests upon and grows out of the relations which men bear to each other in the framework of organized society. It is, then, doubtless true that a mere contract obligation may establish no relation out of which a separate and specific legal duty arises, and yet extraneous circumstances and conditions in connection with it may establish such a relation as to make its performance a legal duty, and its omission a wrong to be redressed. The duty and the tort grow out of the entire range of facts of which the breach of the contract was but one."

In *Chandler v. Allison*, 10 Mich. 460, and 11 Mich.
542, plaintiff occupied a store under a lease from defend-
ant, guaranteeing peaceable and quiet possession; but
defendant ejected him by tearing down the store. It
was not pretended that the lease operated as a protection
to the wrong-doer, or confined plaintiff to an action
upon it. There the purpose was not to destroy plaint-
iff's business, or to appropriate it, but simply to get
possession of the premises to rebuild. Here plaintiff's
effects were put into the street, he was refused admis-
sion to the premises, his orders and books were
seized, his customers told that defendants had suc-
ceeded to the business and that plaintiff was irre-
sponsible, and for the very purpose of appro-
priating to themselves the business and all accrued
benefits under the contract. Plaintiff's business was as
virtually his as was plaintiff's right of possession in the
case cited. A fraud upon one's rights is actionable as
such, notwithstanding those rights may depend in a
measure upon contract relations between the same parties.
Even an act innocent and lawful in itself becomes
tortious when associated with tortious conduct in a
scheme to accomplish an unlawful purpose, and there is
no reason why the same rule should not apply to con-
duct which operates as a breach of contract. A party
cannot be allowed to use a violation of contract obli-
gations as an instrument of oppression to accomplish an
ulterior purpose, and then plead the contract as a limi-
tation of his liability.

Respecting the allegations as to the sending out of cir-
culars and other acts affecting plaintiff's credit and busi-
ness reputation, these acts were admissible as tending to
show the intent and purpose of defendants, and as con-
tributing to the destruction of plaintiff's business. Injury
to his credit and business reputation would naturally

follow from a destruction of his business, and was a proper element of damage to be considered. It was entirely proper to set up that the destruction of the business had been brought about by methods which intensified the injury to plaintiff's credit and business reputation.

Again, it was not necessary to allege that damages followed from each act of the series, or that each act was successful in effecting the particular purpose sought. A single act could not be excluded because it failed to establish the entire case, but if it either contributed to the result, or, though but an attempt, served to show the *animus* of the defendants, it was proper to allege it and to make proof of it. It is not the rule that in actions for slander to business special damages must be either alleged or proved. Words spoken or written, injurious to a person in his business, and false and malicious, are actionable *per se*, and special damages need not be proved. *Haney Manfg. Co. v. Perkins*, 78 Mich. 1; *Weiss v. Whittemore*, 28 Id. 366.

It is contended, too, that there was no evidence tending to show that Harford J. Perkins committed any one of the acts complained of. Many of the acts done were committed in the firm name. The circulars and correspondence were all sent out in the firm name. The orders were canceled and the new orders substituted, and such substituted orders were filled by the firm. The business appropriated was afterwards carried on in the firm name and for the firm's benefit. The point is fully covered by *Haney Manfg. Co. v. Perkins, supra.*

The court instructed the jury that in estimating plaintiff's damages they should consider, in the first place, those damages that may be estimated by a money standard; for instance, the future profits to the plaintiff for the business for such time as would elapse before the

contract could be legally terminated. In addition, the jury were instructed that, the contract being indefinite as to its duration, it could have been determined at any time by either party upon reasonable notice. The plaintiff is not here complaining of this instruction. The testimony shows that this was a going and a growing business; that it had been running for nearly two years. The selling price of the article was fixed and determined, and the cost to plaintiff was fixed at a given percentage of the selling price. A large number of orders were on hand, unfilled, on November 17, 1890, and a number were received by plaintiff after that date. The number of machines sold in a given time was easily ascertained by either party. Neither the cost of the article, nor the expense of the business, nor the amount realized for the article, was a matter of uncertainty; nor was it improbable that the sales for the period to which the court limited the inquiry would at least equal the average sales for a given time immediately preceding; and defendants could not be prejudiced by basing the estimate in a growing business upon the actual average profits for 10 months preceding the breach. Even in an action upon the contract itself, loss of profits, in a case like the present, must be deemed to have been within the contemplation of the parties, as the natural and necessary result of the breach. In *Burrell v. Salt Co.*, 14 Mich. 34, Mr Justice COOLEY, speaking for the Court, says:

"Where the party is to perform labor from which a profit is to spring as the direct result of work done at a contract price, and he is prevented from earning this profit by the wrongful act of the other party, the loss of this profit is a direct and natural result, which the law will presume to follow the breach of the contract."

In *Allis v. McLean*, 48 Mich. 428, it is said that—

"In some cases profits are the best possible measure of damage, for the very reason that the loss is indisputable,

and the amount can be estimated with almost absolute certainty. The case of a contract for the delivery of grain, •or any other article which at all times finds a ready sale at a current market price, is an instance."

The present case comes clearly within these principles, and there was no error in the instruction.

Testimony was admitted showing that in consequence of defendants' acts the postmaster refused to deliver to plaintiff his mail, and the railroad companies refused to deliver freight consigned to him. This testimony was objected to, for the reason that the declaration did not allege that plaintiff had suffered damage thereby. The declaration does allege that, by reason of the conduct of defendants, plaintiff's business was interrupted, and he was prevented from prosecuting it.

As to whether plaintiff was himself in default, the court instructed the jury that, if plaintiff was in default, and had violated the contract, he could not recover, unless they found that such violation had been waived by defendants. That question is disposed of by the verdict.

It is unnecessary to discuss the other questions raised. Some points are made relative to the admission of certain testimony, which are not · without force, but plaintiff's case, as set out in his declaration, was clearly made out by competent testimony. Defendants were given broad · latitude in their proofs.

As to the absence of malicious intent, the court submitted that question to the jury in the most favorable light for defendants, and the verdict clearly indicates that the jury confined themselves to actual damages for a limited period.

We fail to discover any prejudicial error, and the judgment is affirmed.

The other Justices concurred.