SANDOVAL v. EAGLE PASS LUMBER CO.
(No. 6869.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 31, 1923.)

1. Trover and conversion ⬅➡10—Appropriation of proceeds of property received under promise to sell and account for value held not a conversion.

In a suit on a note given by defendant to protect her son from the consequences of his illegal act in obtaining credit for two automobiles on a forged letter of credit, where the petition alleged that she stated to plaintiff that, if it would deliver the cars to her, she would sell them and account for their value, and that the cars were delivered to her and sold, but she neglected to account for the proceeds, *held*, that there was no conversion of the property, and that she committed no tort in appropriating the funds derived from the sale.

2. Husband and wife ⬅➡174—Married woman cannot be held liable for tort growing out of antecedent contract.

Even if a married woman was guilty of converting proceeds of the sale of automobiles which had been delivered to her by the owner upon her agreement to sell and pay over the proceeds in satisfaction of her son's debts, the tort grew out of and was dependent on an antecedent contract, and she could not be held liable for the conversion.

3. Action ⬅➡27(5)—Tort may grow out of or be coincident with contract.

If a person receives the property of another under a contract to sell it and deliver the total proceeds to the owner, and he sells the property and uses the proceeds for his own purposes and benefit, he might be sued in assumpsit or for conversion.

4. Torts ⬅➡3—Person incapable of making contract cannot be bound on tort dependent thereon.

A person incapable of making a contract cannot be bound on a tort dependent on the contract.

5. Husband and wife ⬅➡87(4)—Married woman not liable on joint note executed by son for his previous debt.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 4624, providing that neither the separate property of the husband nor the community property other than the personal earnings of the wife, and the income, rents, and revenues from her separate property, shall be subject to the payments of debts by the wife, except those contracted for necessaries furnished her or her children, provided the wife shall never be the joint maker of a note or a surety on any bond or obligation of another without the joinder of her husband with her in making such contract, a married woman is not liable on a joint note executed by her and her son for a previous debt of the son.

6. Evidence ⬅➡441(1)—Law cannot be evaded by proof of prior or contemporaneous oral agreements made in regard thereto.

The law cannot be evaded by proof of prior or contemporaneous oral agreements made in regard to a matter embodied in a written contract.

7. Husband and wife ⬅➡105—Married woman not liable in action for fraudulent deceit growing out of attempted illegal contracts.

A married woman is not liable in an action for fraudulent deceit growing out of her attempted illegal contracts.

Appeal from District Court, Val Verde County; Joseph Jones, Judge.

Suit by the Eagle Pass Lumber Company against Carolina Carranza de Sandoval and others. From a judgment for plaintiff, defendant named appeals. Reversed.

Foster & Foster, of Del Rio, for appellant.
Boggess, Smith & La Crosse, of Del Rio, for appellee.

FLY, C. J. This is a suit instituted by appellee against appellant. a married woman, her husband, Manuel Sandoval, being joined pro forma, and her son R. T. Carranza, to recover on a certain promissory note attached to and made a part of the petition. R. T. Carranza was omitted as a party in the amended petition on the allegation that he was a bankrupt and a fugitive from justice whose location was unknown to appellee. The first eight paragraphs of the second amended original petition, which are called the first count, declare upon the contract of appellant and her son to pay appellee the sum of $11,-756 "national gold," which was alleged to be of the value of $5,878 in coin of the United States. It is alleged that the note was given for the benefit of appellant's separate property and to protect her son from a criminal

prosecution. The remaining seven paragraphs, called the second count, of the amended petition, sought to bind Mrs. Sandoval on a charge of fraud by which she obtained possession of two automobiles from appellee and carried them to the city of Mexico. Appellee insists on the statement that the cause of action stated in the second count "is not based on fraud and deceit, but is an express declaration in tort." The allegations are in effect that credit had been extended for two automobiles to R. T. Carranza on a letter from his grandfather, S. Carranza, guaranteeing his credit in the sum of $5,000; that the letter was afterward declared by the grandfather to be a forgery, and appellee took possession of the two automobiles and sought a settlement from R. T. Carranza. Then appellees pleaded as follows:

"As a result of said negotiations, the defendant Carolina Carranza de Sandoval came to Eagle Pass, Maverick county, Tex., in the office of this plaintiff, and did on the 14th day of February, A. D. 1920, represent to this plaintiff that she was the mother of the said R. T. Carranza, and as such was willing and anxious to save him from the consequence of his illegal action. Said defendant represented that she did not have the money with which to pay his account, but, by reason of her influential relatives, she could obtain a frank to freight the two automobiles to the city of Mexico, and could there sell the same for more than enough money to not only pay for the price of said cars, as agreed on by the said R. T. Carranza, but the other sums due by the said R. T. Carranza to this plaintiff, and said defendant then and there, and on the date and at the place herein stated, promised and agreed with this plaintiff that, if it would deliver to her said cars, she would ship the same to the city of Mexico in her own name, sell the same at the best price attainable, and deliver to this plaintiff all money received from said sales.

"Plaintiff alleges that the said defendant Carolina Carranza de Sandoval did sell said cars, or dispose of them in some way, and that she has refused, and still refuses, to account to this plaintiff for the money received therefor, or any part thereof, and this plaintiff now alleges that the said defendant at the time she made said representations of her intention to sell said cars for the benefit of this plaintiff knew the same to be false and untrue, and falsely and fraudulently made said representations for the purpose of causing this plaintiff to deliver to her said two automobiles, the said defendant then and there intending and purposing to convert said two automobiles to her own use and benefit; that but for said false and fraudulent representations, knowingly and willfully made by said defendant, this plaintiff would not have delivered to said defendant the two cars hereinbefore described; that said two automobiles were, at the time of their delivery to defendant, of the reasonable market value of $4,600, lawful currency of the United States."

This was followed by an allegation of attachment of real estate in Val Verde county. The cause was tried without a jury, and judgment rendered in favor of appellee as against appellant for the sum of $4,600.

The court sustained exceptions to the first eight paragraphs of the petition, which are named the "first count," and which set up liability on the written instrument, and based his judgment on the second count herein set out. Exceptions general and special were urged to that count and were overruled. This appeal is based on the proposition stated in different guises to the effect that the allegations and proof cannot bind a married woman.

No objection was made to the action of the court in overruling the first count of the petition, nor is any error presented by appellee in this court on that ground, and it follows that this case must be considered as though no allegation of a written contract was ever made.

[1] Neither the allegations nor the facts show any fraud or deceit upon the part of appellant. The allegations show that she merely made a promise to sell the cars in the future and account for their value. She stated she did not have the money to pay for the cars; that she could ship the automobiles freight free to Mexico City, and could then sell them for more than enough to pay the debts of her son. There was no testimony tending to show that any of these representations were false. She did ship them to Mexico City; she did sell them, but neglected to send the proceeds to appellee. She denies that she made any such representations or that she pledged herself to sell the cars and send the money to appellee. The facts tend to show that the automobiles were not delivered to her by reason of verbal promises, but because she had executed a note for the value of the property, which was to become due two months after its date. According to the evidence of R. F. Vaughan, the only witness for appellee, the execution of the note was the culmination of the negotiations as to the delivery of the cars, and formed the consideration for such delivery. The note embodied the contract of the parties, but, if the representations had been placed in the contract and made a part thereof, they would have not bound appellant, even though she had been a feme sole, instead of a married woman. The automobiles were sold to appellant, and she had the right to sell them as she did, and a suit for conversion of the automobiles would have no basis in fact or law. She sold the cars as the parties contemplated that she should do, but kept the money.

The petition alleges that appellant made certain promises which she did not expect to keep, and that appellee was misled by them. It follows that the property was, according to the theory of appellee, obtained by fraud and deceit. It became hers, and she could dispose of it as she saw proper. There could be no conversion of it, and she committed no

tort in appropriating the funds derived from the sale.

[2] If, however, it be held that appellant was guilty of a tort by reason of her conversion of the money to her own use, then the tort grew out of, and was dependent upon, the antecedent contract, and she, being a married woman, could not be held liable for the conversion. Cooley on Torts, p. 195.

[3, 4] If a person receives the property of another under a contract to sell the same and deliver the total proceeds to the owner, and he sells the property and uses the proceeds for his own purposes and benefit, he might be sued in assumpsit or for conversion. In other words, although a tort is generally defined as a wrong independently of a contract, it is conceded that a tort may grow out of, make a part of, or be coincident with a contract. Cooley on Torts, pp. 157, 158; Rauh v. Stevens, 21 Ind. App. 650, 52 N. E. 997; Oliver v. Perkins, 92 Mich. 304, 52 N. W. 609; Shirley v. Railway, 78 Tex. 131, 10 S. W. 543. As said in Rich v. Railway, 87 N. Y. 390:

"In such cases the tort is dependent upon [the contract] while at the same time independent of the contract."

But, while it is true that the person who is capacitated to contract may commit a tort in connection therewith, the person incapable of making the contract cannot be bound on a tort dependent on the contract. If a married woman could be held liable for a tort growing out of, and dependent on, a contract which she could not lawfully make, it would amount to making her liable on the illegal contract, and what could not be reached directly would be accomplished indirectly. Speer's Marital Rights, § 264.

[5] Under the terms of article 4624, Vernon's Sayles' Civ. Stats.:

"Neither the separate property of the husband nor the community property other than the personal earnings of the wife, and the income, rents and revenues from her separate property shall be subject to the payments of debts by the wife, except those contracted for necessaries furnished her or her children; provided, the wife shall never be the joint maker of a note or a surety on any bond or obligation of another without the joinder of her husband with her in making such contract."

The debt sought to be recovered is one for which appellant cannot be held liable on a joint note executed by her and her son for a previous debt of the son. Burnham-Hanna-Munger Dry Goods Co. v. Carter, 52 Tex. Civ. App. 294, 113 S. W. 782; Billingsly v. Land Co., 58 Tex. Civ. App. 67, 123 S. W. 194; Hall v. Decherd, 62 Tex. Civ. App. 426, 131 S. W. 1133; Caldwell v. Scott Bros. (Tex. Civ. App.) 143 S. W. 1192; Thompson v. Morrow (Tex. Civ. App.) 147 S. W. 706; Schenck v. Foster (Tex. Civ. App.) 215 S. W. 877.

[6, 7] The law cannot be evaded by proof of prior or contemporaneous oral agreements made in regard to a matter embodied in a written contract. Appellant cannot be held liable for a tort tied to and connected with her invalid contract. Undoubtedly the oral agreement charged to appellant was made as a part of, or as leading up to, the written contract executed at or about the same time, and, although her failure to remit the proceeds arising from the sale of the automobiles might have been a conversion of the property, still it grew out of her invalid contract in writing, and she cannot be held on it. Speer's Marital Rights, § 266; Ruling Case Law, Husband and Wife, vol. 13, pp. 1225–1227, and authorities cited in footnotes. As held in a number of cases, the married woman is not liable in an action for fraudulent deceit growing out of her attempted illegal contracts. Prentiss v. Paisley, 25 Fla. 927, 7 South. 56, 7 L. R. A. 640; Graham v. Tucker, 56 Fla. 307, 47 South. 563, 19 L. R. A. (N. S.) 531, 131 Am. St. Rep. 124; Ferguson v. Neilson, 17 R. I. 81, 20 Atl. 229, 9 L. R. A. 155, 33 Am. St. Rep. 855; Rowley v. Shepardson, 83 Vt. 167, 74 Atl. 1002, 138 Am. St. Rep. 1078. The rule is, as stated by Ruling Case Law:

"A married woman is not liable for her torts growing out of or connected with a contract which she undertook to make, unless she has capacity to bind herself by contract."

It was admitted by R. F. Vaughan, the only witness for appellee, that—

The "note was the outcome of other conversations with her son and herself, whereby they gave me the note, and with the understanding that she would take possession of the cars and ship them to Mexico City, where she would sell them, and where she would turn over the money to my agent in Mexico City, Mr. M. J. Degraf, and the understanding being that I would turn over the cars to her and she could take them on down."

By the terms of that note appellant and her son were jointly bound to pay a certain fixed sum, and not what the cars might be sold for in the city of Mexico. The whole transaction was merged into the note. The witness admitted that the note was an acknowledgment of the debt, which necessarily constituted a sale of the cars to appellant. If there was a sale, then there could have been no conversion of the property. Appellee does not claim to have retained any lien on the automobiles, written or verbal, but states the note was given "as an acknowledgment that she owed us this much money." The attempt to bind appellant on a charge of tort seems to have arisen afterwards from the exigency of a married woman's nonliability on a note executed as this one was. We do not think that pleadings or proof show the liability of appellant.

The judgment is reversed, and judgment here rendered that appellee take nothing by its suit and pay all costs in this behalf expended.