## BANK OF NOVA SCOTIA v. SAN MIGUEL.
### Civ. No. 5284.

United States District Court
D. Puerto Rico. San Juan Division.
June 10, 1949.

Brown, Newsom & Cordova, San Juan, Puerto Rico, for plaintiff.

McConnell & Valdes, San Juan, Puerto Rico, for defendant.

CHAVEZ, District Judge.

Defendant has filed a motion to strike and in the alternative for a more definite statement.

In the motion to strike defendant prays that plaintiff be required to comply with the following Federal Rules of Civil Procedure, 28 U.S.C.A.:

Rule 10(b) " * * * Each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth."

Rule 8(a) (2) " * * * a short and plain statement of the claim showing that the pleader is entitled to relief."

Rule 8(e) (1): " * * * each averment of a pleading shall be simple, concise, and direct. No technical forms of pleadings for motions are required."

Rule 12(e): "Motion for More Definite Statement. If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, he may move for a more definite statement before interposing his responsive pleading. The motion shall point out the defects complained of and the details desired. If the motion is granted and the order of the court is not obeyed within 10 days after notice of the order or within such other time as the court may fix, the court may strike the pleading to which the motion was directed or make such order as it deems just."

Defendant also moves to strike all redundant, immaterial, impertinent and scandalous matter, and more particularly if the first cause of action is intended for money had and received, moves to strike paragraphs 3, 4, 5, 6, 7, 8, 9 to 13 incl.; and as to the second cause of action, if such cause of action is intended for one of non-payment of a draft to strike all allegations regarding the sugar and its disposal. Paragraphs 22 and 23.

Defendant then prays that in the event that the entire complaint be not stricken, that the following particular paragraphs be stricken; paragraphs 3, 6, 7, 8, 9, 10, 11, 12, and 16, as being wholly immaterial and impertinent; that paragraph 18 be stricken for ambiguity in the use of the word "discount"; also that paragraphs 19, 21, 23 and 28 be stricken.

Defendant then moves in the alternative and prays that in the event that the entire complaint be not stricken on defendant's motion, that motion for a more definite statement be granted as to the allegations contained in the following paragraphs of the complaint: paragraphs 6, 7 and 18, 12, 17, 20, 21 and 22.

Plaintiff's complaint is as follows:

"Complaint: Plaintiff complaining of the defendant alleges: As and for a First Cause of Action.

"1.—The ground upon which the jurisdiction of this Court depends is that the suit is of a civil nature and the amount in controversy exceeds, exclusive of interest and costs, the sum of three thousand dollars ($3000). Plaintiff, The Bank of Nova Scotia, is a banking corporation organized

and existing under the laws of the Dominion of Canada, wherein it is domiciled, with its Head Office in the City of Halifax, Province of Nova Scotia, Canada, and is a subject of the Kingdom of Great Britain. Defendant, Marcelino San Miguel, is a citizen of and domiciled in Puerto Rico.

"2.—Plaintiff is and at all times hereinafter mentioned was engaged in the business of banking with branches in Trujillo City, Republic of Santo Domingo, and San Juan, Puerto Rico.

"3.—That prior to August 5, 1947, defendant had entered into a contract with Jacob J. Salama & Cia., of Tangier, Morocco, wherein and whereby defendant engaged to sell and ship two thousand metric tons of Dominican raw sugar which the said Jacob J. Salama & Cia. agreed to purchase for the sum of $341,713.00.

"4.—That on or about August 5th and 29th, 1947, defendant authorized and instructed plaintiff's branch office in Trujillo City, Santo Domingo, to advance to his agent, Compania Antillana de Importacion y Exportacion C. por A., the sum of $208,600.00 with which to purchase for defendant 2,000 metric tons of Dominican raw sugar and on or about September 2, 1947, authorized and instructed plaintiff's said branch in Trujillo City to advance to his said agent Compania Antillana de Importacion y Exportacion C. por A., such additional amounts as were necessary to pay production taxes, exportation permit, transportation of sugar to dock and such other expenses as were necessary for the embarkation of the said 2,000 metric tons of sugar.

"5.—That plaintiff agreed with defendant to make the said advances at an interest rate of 8% per annum and in accordance with defendant's instruction and authorization and while the said instruction and authorization was in full force and effect, paid over to defendant's said agent, Compania Antillana de Importacion y Exportacion C. por A., advances requested by defendant's said agent on August 8, 12, 18, 19 and 30, 1947, and September 3, 8, 16, 23 and 27, 1947, and October 14, 1947, to the total amount of $307,800.

"6.—That on or about October 13, 1947, defendant wrote the Manager of Plaintiff's Trujillo City Branch, enclosing a draft for the sum of $341,713.00 in favor of plaintiff, drawn by said defendant on The Chase National Bank of the City of New York under a letter of credit No. E-50962 issued by the said Chase National Bank of the City of New York, with commercial invoices in quadruplicate, and his said agent Compania Antillana de Importacion y Exportacion C. por A. delivered to plaintiff's said Manager certain other documents to accompany the draft required by the said letter of credit and defendant requested plaintiff's said Manager to discount from the said draft the amounts advanced to defendant's said agent, Compania Antillana de Importacion y Exportacion C. por A. and interest thereon, and to remit to defendant a check for the balance.

"7.—That on October 16, 1947, plaintiff's said Branch in Trujillo City, in conformity with defendant's request, discounted from the said draft the sum of $312,110.25, the amount of its said advances to defendant's agent Compania Antillana de Importacion y Exportacion C. por A., plus interest and exchange, and on the same date sent to defendant its check for the balance of $29,602.75.

"8.—That the said draft for $341,713.00 was duly presented for payment to the drawee, The Chase National Bank of the City of New York, on October 20, 1947, and on the same day the said drawee refused to pay the same and returned the draft to plaintiff.

"9.—That after the shipment and arrival of the said 2,000 metric tons of sugar in Morocco, the said Jacob J. Salama & Cia. refused to accept the said sugar and to pay the contract price of $341,713.00.

"10.—In order to prevent deterioration and loss of the said 2,000 metric tons of sugar, then in Mililla, Morocco, and to minimize damages, without waiving any claims, rights or defenses that any of the parties had or might have against any other party, plaintiff, defendant and Compania Antillana de Importacion y Exportacion C. por A. entered into an agreement in writ-

ing on April 8, 1948, in and by which any of the parties was authorized to negotiate with Jacob J. Salama & Cia., for the purpose of obtaining from said Jacob J. Salama & Cia. an offer to accept the said sugar and to pay therefor an amount not less than $216,713.00, a reduction of $125,000. of the said contract purchase price. And it was further agreed that any amount paid by Jacob J. Salama & Cia. as a result of such negotiation should be paid to the plaintiff and the net amount of the settlement credited by plaintiff against the face amount of said draft and its said claim for $341,713.00, in which amount were included the advance made to Compania Antillana de Importacion y Exportacion C. por A. by plaintiff upon defendant's authorization and instruction:

"11.—Acting under the said agreement plaintiff negotiated a settlement with Jacob J. Salama & Cia. and as a result of plaintiff's efforts the said Jacob J. Salama & Cia. agreed to accept the said 2,000 tons of sugar and to pay for the same the sum of $256,713.00 or $85,000.00 less than the purchase price it had contracted to pay defendant. The said amount of $256,713.00 was paid to plaintiff on June 2, 1948.

"12.—That plaintiff, in order to effect the said settlement with Jacob J. Salama & Cia., sent its representative E. N. Robinson to Tangier, Morocco, to negotiate with Jacob J. Salama & Cia., where its said representative remained until the negotiations were terminated, had conferences with the representative in New York of Jacob J. Salama & Cia., and officers of The Chase National Bank and conferences and communications by cable and telephone continuing over several months, consulted and obtained the advice and opinion of attorneys respecting numerous questions arising during the said negotiations and paid insurance of the sugar. That the amount necessarily expended by plaintiff for the said purpose was $13,455.16 and the net amount available for application on defendant's said indebtedness $243,257.84.

"13.—That on June 2, 1948, the amount owing for the said advances made upon defendant's instruction to his agent, Compania Antillana de Importacion y Exporta-

cion C. por A., with interest to that date, was $323,383.92 against which amount plaintiff credited $213,655.18 which was the part of the said net product of the said payment by Jacob J. Salama & Cia., applicable to said advances and reduced the amount owing for such advances and interest then owing to $109,728.74.

"14.—That defendant owes plaintiff for such unpaid balances of the advances made to Compania Antillana de Importacion y Exportacion $109,728.74 with interest thereon at 8% per annum from June 2, 1948.

"And as and for a Second Cause of Action

"15.—Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 and 2.

"16.—That on October 13, 1947 defendant mailed from New York to plaintiff's branch office in Trujillo City, Santo Domingo, together with commercial invoices in quadruplicate his bill of exchange in writing in Spanish, which translated into English is in words and figures as follows: 'Payable sight. U. S. $341,713.00. Trujillo City R. C.—15 Oct. 1947—At sight pay to the order of The Bank of Nova Scotia the sum of three hundred forty one thousand seven hundred and thirteen 00/100 dollars. —Letter of Credit No. E50962 dated July 31, 1947.—Value received that will be charged to the account of Letter of Credit No. E-50962 dated July 31, 1947. To The Chase National Bank of the City of New York.—(sgd) M. San Miguel.—Marcelino San Miguel.'

"17.—That the said Bill of Exchange was drawn by defendant upon the Chase National Bank of the City of New York under a Letter of Credit issued by The Chase National Bank of the City of New York in favor of defendant dated July 31, 1947, reciting that Banco Hispano Americano, Tangier, Morocco, had instructed the said Chase National Bank of the City of New York to advise defendant that it had opened its irrevocable credit for account of defendant by order of Jacob J. Salama & Cia., for a sum not exceeding a total of about $345,000.00 U. S. Currency available to defendant by drafts drawn by him on the

said Chase National Bank of the City of New York which would be duly honored on delivery of documents specified in the said Letter of Credit, among which were a full set of bills of lading dated during July or August to order blank endorsed "Notify Jacob J. Salama & Compania showing destination Tangier to Spanish Morocco evidencing one single shipment of 2,000 metric tons crude sugar 96/97 degrees polarization at $7.75 per bag of 100 pounds F.O.B. Vessel Dominican Ports provided such drafts were presented at the said Chase National Bank of the City of New York on or before September 15, 1947.

"The said Letter of Credit was thereafter amended prior to the drawing of the said draft extending the time for the presentation thereof to October 20, 1947, requiring that the Bills of Lading should be made to the order of Banco Hispano Americano, Tangiers, and showing Milella as the destination in transit for Spanish Morocco and further providing that the sugar should be packed in bags of approximately 250 pounds.

"18.—That in a letter written by defendant on October 13, 1947, addressed to the Manager of plaintiff's Branch Office in Trujillo City, Dominican Republic, transmitting the said draft for $341,713.00 defendant requested plaintiff to discount from the said draft the amounts advanced by plaintiff to defendant's agent, Compania Antillana de Importacion y Exportacion C. por A. by defendant's instruction and authorization for the purchase of 2,000 metric tons of Dominican raw sugar, taxes and other expenses connected with the shipment of the said sugar, and to send defendant a New York check for the balance remaining after deducting such advances from the face amount of the said draft.

"19.—Plaintiff repeats and realleges each and every allegation contained in paragraph 7.

"20.—That the said bill of exchange, together with the documents delivered to plaintiff by defendant and his agent, Compania Antillana de Exportacion as complying with the requirements of the said letter of Credit was duly presented for payment to the drawee, the Chase National Bank of the City of New York on October 20, 1947, and later on the afternoon of the same day at about 4:30 p.m., the said drawee returned the said bill of exchange and documents to plaintiff's Agency in the City of New York advising that payment was refused because the documents presented with the said bill of exchange did not comply with the requirements of the letter of credit in certain specified particulars.

"21—Immediately after the refusal of the drawee to pay the said bill of exchange Mr. Hinchcliffe, Agent in charge of plaintiff's New York Agency, notified defendent, who was then in New York City, by telephone of the dishonor of the said bill of exchange by non-payment and the reasons assigned by the drawee for refusal to pay. Defendant thereupon stated to plaintiff's said Agent that he would call Mr. George Schaeffer, one of the Vice-Presidents of the drawee Bank and requested him to await his further advice. Approximately ten minutes thereafter defendant called plaintiff's said Agent by telephone and said that he had talked with Mr. Schaeffer by telephone and had been informed that the drawee, The Chase National Bank of the City of New York, had advised Banco Hispano Americano, Tangier, Morocco, by cable, of drawee's refusal to pay the said bill of exchange and the defects in the accompanying documents upon which the refusal to pay was based and had sent a cable to Banco Hispano Americano in Tangier, Morrocco, asking for authorization to pay the said bill of exchange and requesting a prompt reply. Defendant then requested and instructed the said Agent of plaintiff's New York Agency to return the said bill of exchange and documents to the drawee Bank direct to its Vice-President, Mr. Schaeffer, stating that he believed that it would be paid. He requested Mr. Hinchcliffe to keep in touch with Mr. Schaeffer.

"Thereupon plaintiff's Agent, Mr. Hinchcliffe, called drawee's Vice-President, Mr. George Schaeffer by telephone to advise him of defendant's instructions and Mr. Schaeffer confirmed defendant's statements regarding his telephone conversation with defendant and requested that the said bill of exchange and documents be sent to him

at The Chase National Bank. Mr. Schaeffer further stated to Mr. Hinchcliffe that he was giving the matter his personal attention and that Mr. Hinchliffe would be advised the following morning of the result.

"Mr. Schaeffer further stated that as Banco Hispano Americano, Tangier, Morocco, had already been put on notice by cable by Chase National Bank's letter of credit department of the defects in the documents and the credit expiring that day, that until drawee Bank received authorization from Banco Hispano Americano to pay and for which the Chase National Bank had requested by cable nothing further could be done. Immediately after this conversation at about 5:00 p. m. on the afternoon of October 20, 1947 plaintiff complying with defendant's said request returned the said draft and documents to the drawee Bank delivering them to its Vice-President, Mr. Schaeffer.

"On the following morning, October 21, 1947, Mr. Hinchcliffe again called defendant by telephone to advise him of the delivery of the bill of exchange and documents to Mr. Schaeffer and that the drawing was still unpaid, to which defendant replied that he was pressing Mr. Schaeffer, who was awaiting a reply from Banco Hispano Americano, Tangier, Morocco, and that he felt quite sure that the bill of exchange would be paid.

"That defendant, with the assistance of Mr. Schaeffer, attempted to cure the defects in the documents accompanying the draft and as plaintiff is informed and believes, defendant offered to give the Chase National Bank a guarantee that he would cure any defects in the documents.

"As plaintiff is informed and believes, drawee's cable of October 20th to Banco Hispano Americano, Tangier, was not answered until October 31, 1948.

"That the said bill of exchange and documents remained in the possession of Chase National Bank of the City of New York until November 7, 1947, on which date the said Chase National Bank of the City of New York returned the said bill of exchange and documents to plaintiff with letter setting out cables sent by the said Bank to Banco Hispano Americano in the attempt to obtain its authorization for the payment of the said bill of exchange and reply cables from Banco Hispano Americano, showing the failure to obtain authorization for payment. By reason of the said requests, statements and conduct of defendant, plaintiff was induced not to protest the said bill of exchange.

"22.—That after the shipment of the 2,000 metric tons of Dominican raw sugar covered by the invoice and bill of lading required by the said Letter of Credit and for the payment of which the said credit was established and the arrival of the said sugar at Mililla, Morocco, the purchaser of the said sugar, Jacob J. Salama & Cia., upon whose orders the said credit was established, refused to accept the said sugar and to pay for the same.

"23.—Plaintiff repeats and realleges each and every allegation contained in paragraphs 10, 11 and 12.

"24.—That on June 2, 1948, defendant owed the face amount of the said bill of exchange, $341,713.00 plus $17,300.92 interest on said amount at 8% per annum from October 16, 1947 to June 2, 1948. Plaintiff credited upon the said indebtedness the sum of $243,257.84, the net product of the payment made by Jacob J. Salama & Cia., leaving the amount of $115,756.08 owing on said draft, with interest thereon, at the rate of 8% per annum from June 2nd, 1948, no part of which has been paid.

"25.—Plaintiff owns and holds the said draft.

"Wherefore plaintiff demands judgment against defendant in the sum of $115,756.08 which interest at the rate of 8% per annum from June 2nd, 1948, or in the alternative judgment in the sum of $109,728.74 with interest at the rate of 8% per annum from June 2nd, 1948."

"The function of pleadings under the Federal Rules is to give fair notice of the claim asserted so as to enable the adverse party to answer and prepare for trial, to allow for the application of the doctrine of res judicata, and to show the type of case brought, so that it may be assigned to the proper form of trial." Moore's Federal Practice, Vol. 2, 2d Ed., p. 1649.

■ "The modern philosophy concerning pleadings is that they do little more than indicate generally the type of litigation that is involved. A generalized summary of the case that affords fair notice is all that is required. Pleadings shall be so construed as to do substantial justice." Securities and Exchange Commission v. Timetrust, Inc., D. C., 28 F.Supp. 34, 41.

"One reason that the courts can afford to be so liberal on the matter of pleading is, of course, the broad scope which the Rules give to the various pre-trial devices for discovery of facts and formulation of issues. Under the old practice the pleadings not only served the function of giving notice of the claim asserted, but they also carried the burden of formulating the issues and to a large extent of advising the adverse party of the facts involved. Now the pre-trial conference under Rule 16 and the deposition and discovery procedure under Rules 26–37 afford a much more efficient method of getting at the facts than pleadings ever offered, and they also bear much of the burden of making up the issues, so that the only real office which the pleadings continue to serve is that of giving notice." Moore's Fed. Practice, Vol. 2, 2d Ed., p. 1652.

■ "If a plaintiff has complied with Rule 8 in drafting his complaint he should not be met with a motion under Rule 12(e). Such motions are properly presented when the complaint is so vague or ambiguous or contains such broad generalizations that the defendant cannot frame an answer thereto. Mere conciseness and brevity is not the test, although conciseness and brevity is the very object the rules seek to attain. I am of the opinion that the framers of the rules did not intend to permit a plaintiff to subject a defendant to the various processes of the court without first stating definite facts upon which a judgment might be based. Of course, verbosity, redundancy and the pleading of evidence should be avoided, but what constitutes 'a short and plain statement' must be determined by the type of case, the relief sought, the situation of the parties and whether it is desirable in obtaining speedy justice, that the plaintiff state with particularity

his alleged claim. Claims may be of such a nature as to require particularity in statement without redundancy or verbosity. In considering such a motion the court should not be restricted by the mass of decisions as to whether a particular allegation is one of fact, evidence or law." Fleming v. Dierks Lumber & Coal Co., D. C., 39 F. Supp. 237, 240.

"The pleading meets the requirements of Rules 8(a) (2), 8(e) (1) and 10(b) of the Federal Rules of Civil Procedure. Section 8(a) (2) provides that the complaint shall contain a short and plain statement of the claim showing the right to relief; Section 8(e) (1) that every averment of the pleading shall be simple and direct and Section 10(b) that each paragraph shall consist of the statement of a single set of circumstances. The complaint could well have been couched in less extensive language with equal effect. There are therein repetitious allegations. It is not short. But the application of these rules is to be made in the light of the nature of the action. It is quite obvious that a complaint charging a conspiracy in violation of the anti-trust laws generally must contain a recital of numerous acts and circumstances. It is not a short statement of a claim as the word 'short' is applied in a 'pleading on contract or in negligence.' United States v. Schine Chain Theatres et al., D.C., 1 F.R.D. 205, 208. That can not be the intent of the rule." Rivoli Operating Corp. v. Loew's, Inc., D.C., 7 F.R.D. 219, 223.

In a discussion of Rule 10(b) Moore's Federal Practice on page 2005 states as follows:

"The objective of the subdivision is clarity in pleading. At the same time dilatory motions for separate paragraphing or separate statements are discouraged, since rigid requirements are not laid down; a paragraph is to be limited to a single set of circumstances only 'as far as practicable'; and separate statement is demanded only when several claims are stated, founded on separate transactions or occurrences, or when separate defenses (other than denials) are set up, and when in either case separation 'facilitates the clear presentation of the matters set forth.'

"In stating *separate* claims or causes of action, statement by way of separate counts is often desirable. Thus if claims are joined pursuant to Rule 18 they should normally be stated in different counts. This is particularly true where the limitation periods are different as to the different claims, or where the court may not have jurisdiction as to all of the claims, or where for some other reason a separate statement will facilitate the disposition of the issues. On the other hand, absolute separate statement is not demanded even where separate claims are involved, since it must appear (1) that the claims are founded on separate transactions or occurrences and (2) that separation will facilitate clear presentation." Moore's Fed. Practice p. 2007-2008.

To the same effect see Original Ballet Russe v. Ballet Theatre, 2 Cir., 133 F.2d 187, 189.

In the Ballet Russe case, supra, the Court also said:

"The fact that in pleading his claim the plaintiff has charged the defendants with accomplishing the harm by acts which viewed independently might themselves be deemed torts does not necessarily mean that he has alleged several causes of action which must be stated in separate counts. In Oliver v. Perkins, 92 Mich. 304, 52 N.W. 609, the plaintiff's declaration alleged a series of acts which the defendants classified as constituting respectively a breach of contract, a trespass, and a slander, but the court held that a series of wrongful acts, all aimed at a single result and contributing to the injury complained of, to wit, the destruction of one's business, credit and reputation, may be counted upon, not severally but collectively, as producing that result, in an action on the case."

■ Upon defendant's motion to strike the numerous paragraphs set out in the motion to strike on the grounds that they are redundant, immaterial, impertinent and scandalous, the rules seem to be as follows:

"Motions to strike alleged redundant, immaterial, impertinent or scandalous matter are not favored. Matter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation. If there is any doubt as to whether under any contingency the matter may raise an issue, the motion should be denied. Even if the allegations are redundant or immaterial, they need not be stricken if their presence in the pleading cannot prejudice the adverse party. 'This court,' Judge Delehant has said, 'acknowledges its entertainment of considerable sympathy with the thought that, short of abuse or practical impropriety, a reasonable latitude should be allowed to a pleader in the statement of his claim or defense; and that not every dubious or errant phrase in a pleading should be eradicated from it to suit the taste of a critical adversary. In practice, what matters is not alone whether the phrase is immaterial, but whether its presence, if it be immaterial, is calculated to be harmful.'" Moore's Fed. Practice, Vol. 2, 2d Ed., p. 2317, 2318.

"Because of the liberal view taken by the court in holding the complaint sufficient, it is unnecessary to give serious consideration to defendant's motion to strike. Perfection in pleading is rare. There may be allegations in the complaint which might have been more briefly and clearly stated, and some sentences which might properly have been left out, but this kind of criticism could be urged in all cases. Prolixity is a besetting sin of most pleaders. Courts should deal with the substance, and not the form of the language of the pleadings. Where no harm will result from immaterial matter not affecting the substance, courts should hesitate to disturb a pleading." Securities and Exchange Com'n v. Timetrust, Inc., D. C., 28 F.Supp. 44.

■ As to the motion for a more definite statement, the rule seems to be that generally they should be overruled as detailed information about any claim may be obtained through interrogatories and discovery under Rules 33 to 37. Securities and Exchange Comm. v. Timetrust, Inc., supra.

"A number of courts appreciated that one of the objectives of the Federal Rules is simplicity of pleading and that accurate pretrial information is to be had from the deposition and discovery rules. As a con-

sequence, they quite uniformly denied a motion made under subdivision 12(e)." Moore's Fed. Practice, Vol. 2, 2d Ed., p. 2279.

"It would therefore appear that motions form a more definite statement will only be granted in those cases where the complaint is so vague or ambiguous or contains such broad generalizations that the defendant cannot frame an answer thereto." Moore's, Vol. 2, 2d Ed., 2281.

■■ The Court feels that plaintiff has complied with Rule 8(a); 8(c) (1) and 10(b). The claim for $13,455.16 which plaintiff alleges it necessarily expended in negotiating and effecting a sale of the sugar in Morocco is not a separate claim. However, even if separate claims are involved, separation is justified only when it will facilitate clear presentation.

Therefore, the motion to strike and the motion for a more definite statement are denied.