## MASTERS, Inc. v. SUNBEAM CORP. et al.

United States District Court
S. D. New York.
Dec. 29, 1952.

Joseph F. Ruggieri and Francis M. Verrilli, Brooklyn, N. Y., for plaintiff.

Rogers, Hoge & Hills, New York City, for defendants.

Lauterstein & Lauterstein, New York City, amici curiæ.

NOONAN, District Judge.

This action is brought by Masters, Inc. against Sunbeam Corporation and certain of its wholesale distributors alleging that Sunbeam's "universal fair trade contract system" violates the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note. The complaint, in brief, alleges that the defendant, through the operation of this fair trade contract system, has engaged in a conspiracy and concerted activity in restraint of trade. Plaintiff, Masters, seeks treble damages and injunctive relief.

Defendants have moved this court for an order (a) dismissing the complaint for failure to state a claim, rule 12(b)(6) F.R. C.P., 28 U.S.C.A.; (b) for summary judgment, rule 56(b) F.R.C.P. on the following grounds:

(1) the contracts which plaintiff alleges to be illegal are within the express provisions of the New York Fair Trade Act, and the Miller-Tydings Amendment to the Sherman Anti-Trust Act.

(2) plaintiff has suffered no injury.

(3) plaintiff, seeking equitable relief, comes into court with unclean hands.

Items (2) and (3) set forth above involve questions of fact which cannot be resolved here, and will not be further considered by the court. However, the motion to dismiss, and for a summary judgment, may be considered as one for they will rise or fall on the determination of whether Sunbeam's universal fair trade contract system is lawful.

By way of background, defendant Sunbeam is a manufacturer of electrical appliances, the remaining defendants are wholesale distributors of Sunbeam appliances in the New York area, and its products are distributed under the trademark "Sunbeam". An essential factor in its distribution system has been the maintenance of minimum fair trade prices under various State Fair Trade Laws since 1937.

Prior to the decision in Schwegmann Bros. v. Calvert Distillers Corp., 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035, plaintiff endeavored to enforce its fair trade prices against non-signers as well as signers of fair trade contracts. Subsequent to this decision it evolved and put into operation a "universal fair trade contract system" with its wholesale distributors and retailers. This system was designed to limit sales of Sunbeam products to signatories of fair trade contracts with Sunbeam. In the Distributors Fair Trade Contracts, the wholesalers agree (1) to sell Sunbeam's trade marked products at not less than stipulated minimum prices, and (2) to sell such products only to retailers who have signed fair trade contracts with Sunbeam.

Plaintiff, Masters, Inc., operates a retail store in New York City, and had entered into fair trade agreements with Sunbeam Corporation in 1938, and again in 1950, but it refused to execute a retailer contract after the decision in the Schwegmann case, supra. Accordingly, Masters, in its complaint, alleges that the wholesalers, who, prior to the institution of the universal fair trade contract system, had supplied Masters with Sunbeam products, have now, under the operation of such system, uniformly refused to sell Sunbeam products to Masters.

■ Basically, agreements for price maintenance of articles moving in interstate commerce are unreasonable restraints within the meaning of the Sherman Act, United States v. Trenton Potteries, 273 U.S. 392, 47 S.Ct. 377, 71 L.Ed. 700, United States v. Socony-Vacuum Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129. Restrictions imposed by the seller upon resale prices of articles moving in interstate commerce were, until the enactment of the Miller-Tydings Act, 50 Stat. 693, 15 U.S. C.A. § 1, consistently held to be violations of the Sherman Act. U. S. v. Univis Lens Co., 316 U.S. 241, 253, 62 S.Ct. 1088, 86 L.Ed. 1408 and cases cited.

Thus, in the instant case, it would appear that Sunbeam's Universal Fair Trade Contract system falls within the prohibitions of the Sherman Act unless it is immunized by the Miller-Tydings Amendment.

The Miller-Tydings Amendment excepted from the Sherman Law contracts or agreements prescribing minimum prices for resale of trade marked commodities where such contracts or agreements are valid under the law of the State. It is not contended here that Sunbeam's system, now under attack, is unlawful under the Fair Trade laws of the State of New York, or the Fair Trade law of any other state.

Plaintiff argues that the provision of Sunbeam's Distributor Fair Trade Contract whereby the distributor is obligated not to sell Sunbeam's products to any retailer who refuses to execute a Sunbeam Retailer Fair Trade Contract, while lawful under the laws of New York[1], finds no sanction in the provisions of the Miller-Tydings Act and constitutes an unlawful price-fixing and boycott scheme in violation of the Sherman Act.

Sunbeam's position, however, is that as its Fair Trade contract system is lawful under the State Acts, its system is within the exemption of the Miller-Tydings Act. Further, since the Supreme Court has held that the Miller-Tydings Act does not authorize a manufacturer in Interstate Commerce to resort to the Non-signer (tort remedy) clause to protect his fair trade contracts, it is argued that the only statutory method left is for a manufacturer to distribute his goods entirely and uniformly under types of contracts validated by the State Fair Trade Laws. Thus Sunbeam contends that a necessary and integral part of such contracts is a clause in the wholesalers' contract limiting resales to retailers who agree to maintain the price. Sunbeam concludes that, absent authorization for such a clause, the relief granted in the Miller-Tydings Act is ineffective.

■ I agree that where the language of a statute is susceptible of a construction which preserves the usefulness of the section, a court is bound to give expression to the intendment of the law. Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 333, 59 S.Ct. 191, 83 L.Ed. 195; thus we turn to the act itself.

■ It is clear from the Schwegmann case that a contract lawful under a State Fair Trade Act is not ipso facto immunized by the Miller-Tydings Act. The immunity granted by Congress is, in the words of the Supreme Court, 341 U.S. at page 388, 71 S.Ct. 747; Schwegmann case, supra, a "limited immunity" exempting only "contracts or agreements prescribing minimum prices for the resale" of a commodity.

■ As stated previously, the provision in Sunbeam's Distributor Contract limiting resales to those retailers who have signed Fair Trade Agreements, is expressly authorized by the State Fair Trade Law.[2] However, this provision is excluded from the Miller-Tydings Act, and as this immunity is a "limited" one, I think this exclusion is highly significant if not dispositive.

This provision of the Distributor's contract does more than merely prescribe minimum prices; it imposes upon the distributor another condition of resale. On this point,

1. Consolidated Laws of New York, General Business Law, Sec. 369-a 1(b) "That the vendee or producer require any dealer to whom he may resell such commodity to agree that he will not, in turn, resell except at the price stipulated by such vendor or by such vendee."

2. See Footnote 1, supra.

the Miller-Tydings Bill, as originally introduced, reads as follows:

"Provided, that nothing herein contained shall render illegal contracts or agreements prescribing minimum prices or *other conditions for the resale of a commodity* * * *". (80 Cong.Rec. 8433) (Emphasis supplied.)

Obviously, if the bill had passed in this form, there would be a firm basis for Sunbeam's contention that its distributor contracts are cloaked with immunity. As pointed out in the Schwegmann case, supra, 341 U.S. at page 393, 71 S.Ct. 745, why the words "other conditions" were deleted does not appear, but it gives rise to doubts, especially when authorization for this condition of resale was so clearly set forth in the various State Fair Trade Acts.

Therefore, even accepting Sunbeam's argument as a fact viz., that the failure to extend the immunization of the Act to the disputed provision renders any fair trade contract system ineffectual, the court may not stretch the act beyond its precise words, and if they fail to achieve the desired end, remedial measures are to be had from the Congress.

Significantly, subsequent both to the Schwegmann case and to the filing of the complaint in this action, the Congress has enacted further legislation on this subject.[3]

This statute provides in part:

"(2) Nothing contained in this act or in any of the Antitrust Acts shall render unlawful any contracts or agreements prescribing minimum or stipulated prices, or *requiring a vendee to enter into contracts or agreements prescribing minimum or stipulated prices,* * * *." (Italics supplied.) 15 U.S.C.A. § 45(2).

█ This latter provision would seemingly extend immunity to the disputed paragraph of Sunbeam's Distributor Fair Trade contract. Sunbeam argues that this legislation, commonly known as the McGuire Act, merely clarifies the Miller-Tydings Act. However, the McGuire Act, in effect, (1) authorizes the enforcement of State Fair Trade laws against non-signers; (2) it sanctions agreements prescribing stipulated as well as minimum prices; (3) it obliquely adopts the provisions of the State Fair Trade Law[4] authorizing a producer to agree with a distributor, that the latter will not sell to a retailer who does not, in turn, execute a Fair Trade contract.

In the Schwegmann case it was pointed out that items (1) and (2) supra, were not authorized by the Miller-Tydings Act. Thus the McGuire Act is not merely legislation clarifying the prior act. It may well be that the Congress intended to enact these provisions into law when it enacted the Miller-Tydings Act[5], but as indicated it failed to do so. I think the same reasoning is applicable to item (3).

The question of fair trade legislation was long before the Congress, at least from 1929 when the Capper-Kelly bill was presented for consideration. By the time Senator Tydings introduced his bill in 1936, at least ten states had resale price maintenance laws. The state laws were models for the federal bills, yet the drafters of the bill excluded the provision (explicitly set forth in the State Fair Trade Law—note 1 supra) which item (3) supra now seemingly sanctions, even though it was a prominent part of the model. Additional support is had from the House Report accompanying the McGuire Act[6]. Discussing that paragraph of the Act quoted supra, the effect of which is set forth in items (2) and (3) supra, the Report pp. 5 and 6, states:

* * * "This paragraph differs from the Miller-Tydings Act in two respects. First, it includes a provision expressly covering contracts which prescribe 'stipulated' prices; such contracts are not expressly covered by the

---

3. Public Law 542, 82nd Congress, Chapter 745 2nd Sess., H.R. 5767.

4. See Footnote 1, supra.

5. House Report No. 1437, 82nd Congress, 2d Session to accompany H.R. 5767, p. 1.

6. See Footnote 5 supra.

Miller-Tydings Act. Second, it includes a provision expressly covering a contract which requires a vendee to enter into another contract prescribing a minimum or stipulated price; such a contract is not expressly covered by the Miller-Tydings Act."

Accordingly, though this analysis first states that these two provisions differ from the Miller-Tydings Amendment, and later qualifies this by the phrase "not expressly covered by the Miller-Tydings Act", I cannot, in view of the legislative history, and the fact that the immunity granted by the Miller-Tydings Act is "limited", go beyond the precise words of the Act.

Thus I conclude that the condition of resale contained in Sunbeam's Distributor Fair Trade Contract, other than that prescribing minimum prices, is not immunized by the Miller-Tydings Act.

Therefore, defendants' motion to dismiss and for summary judgment is denied.