**SUNBEAM CORP. v. PAYLESS DRUG STORES et al.**

No. 31068.

United States District Court
N. D. California, S. D.

May 15, 1953.

34

Herman T. Van Mell, Chicago, Ill., Landels & Weigel, Stanley A. Weigel, San Francisco, Cal., for plaintiff.

Fitzgerald, Abbott & Beardsley, M. W. Dobrzensky, Edward B. Kelly and Robert S. Rutledge, Oakland, Cal., for defendants, Skaggs Payless Drug Stores; L. H. Vierk and Glynn E. Tucker, L. J. Skaggs, Mary Skaggs, his wife, and Payless Drug Stores.

Gallagher & Ruffo and Albert J. Ruffo, San Jose, Cal., and Gagliardi & Ursich, Tacoma, Wash., for defendant Theodore H. Zimmerman.

**OLIVER T. CARTER, District Judge.**

Plaintiff, Sunbeam Corporation, is an Illinois corporation which manufactures and sells electrical household appliances. Defendants are corporations, a partnership and persons engaged in the retail drug and variety store business in a number of cities in the States of California and Washington.

The complaint seeks to enjoin and to recover damages for the alleged tortious interference with plaintiff's contractual relationships, alleged restraint of trade and alleged unfair competition in the use of trademarks. Certain of defendants [1] have moved to dismiss or to strike the complaint and the causes of action alleged therein for failure to state a claim upon which relief can be granted, and on the further ground that the complaint fails to comply with subdivisions (a) (2) and (e) (1) of Rule 8 of the Federal Rules of Civil Procedure, 28 U.S.C.A. Defendant Theodore H. Zimmerman has moved the court to quash the service upon himself of the order to show cause, summons, complaint and notice to take deposition, and to dismiss him from this action.

The material facts, as alleged, are as follows:

Plaintiff's products, which are hereafter referred to as Sunbeam products, are identified by trademarks, brands and names owned by plaintiff. Plaintiff sells its products to wholesale distributors, who in turn resell such products to retail stores. Plaintiff has undertaken to fix the prices at which Sunbeam products may be resold—first by wholesalers to retail stores, and second by retail stores to consumers. To accomplish this result plaintiff has entered into a series of contracts with the wholesalers and retailers who handle Sunbeam products. Through the medium of such contracts plaintiff has exacted from each wholesaler to whom it sells a promise that the latter will resell Sunbeam products at prices not less than the minimum wholesale prices specified by plaintiff, and a further promise that the wholesaler will require any retailer to whom Sunbeam products are resold to agree to resell such products at prices not less than the minimum retail prices specified by plaintiff. Those retailers who contract with plaintiff promise to maintain, in the selling of Sunbeam products, minimum retail prices specified by plaintiff. None of the defendants have entered into any such contracts with plaintiff. They have, nevertheless, been able to secure Sunbeam products for resale in their stores by inducing those who have contracted with plaintiff to breach such contracts and by inducing others to enter into such contracts with plaintiff for the sole purpose of obtaining Sun-

---

[1] The defendants so moving are: Skaggs Pay Less Drug Stores, a corporation; Pay Less Drug Stores, a partnership; L. J. Skaggs; Mary Skaggs, his wife; Glynn E. Tucker; and L. H. Vierk. For the sake of brevity, the named defendants will be referred to throughout this opinion simply as "defendants."

beam products for resale by defendants. Defendants have advertised for sale, and sold Sunbeam products at prices less than the minimum prices specified by plaintiff.

This case has been productive of voluminous pleadings, arguments and briefs, attempting to raise complicating collateral issues. Therefore it is appropriate to reduce the controversy to the simplest possible terms.

The complaint alleges three "causes of action." None of these is an action in contract, but rather two are in tort and the other is a right of action created by federal statute.[2] Nor is any of these an action for unfair competition against non-signers of price maintenance contracts, as was the case in Schwegmann Brothers v. Calvert Distillers Corp., 341 U.S. 384, 71 S.Ct. 745, 95 L. Ed. 1035.[3]

■ The theory upon which the first claim for relief is based is the allegation that defendants have tortiously interfered with plaintiff's contractual relations. It is alleged that defendants have knowingly, wilfully and without justification induced breaches of plaintiff's contracts. That such conduct is actionable has long been well settled in law and equity in a long line of cases stemming from Lumley v. Gye, 2 E. & B. 216, and including, to cite but a few of the modern cases, Angle v. Chicago, St. Paul, Minneapolis & Omaha R. Co., 151 U.S. 1, 14 S.Ct. 240, 38 L.Ed. 55; Bitterman v. Louisville & Nashville R. Co., 207 U.S. 205, 28 S.Ct. 91, 52 L.Ed. 171; Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed 131; American Malting Co. v. Keitel, 2 Cir., 209 F.

351; Falstaff Brewing Corp. v. Iowa Fruit & Produce Co., 8 Cir., 112 F.2d 101; Keene Lumber Co. v. Leventhal, 1 Cir., 165 F.2d 815; Baruch v. Beech Aircraft Corp., 10 Cir., 175 F.2d 1; Hope Basket Co. v. Product Advancement Corp., 6 Cir., 187 F.2d 1008; Gruen Watch Co. v. Artists Alliance, 9 Cir., 191 F.2d 700; Philadelphia Record Co. v. Leopold, D.C.S.D.N.Y., 40 F.Supp. 346; Imperial Ice Co. v. Rossier, 18 Cal.2d 33, 112 P.2d 631; California Grape Control Board, Ltd. v. California Produce Corp., 4 Cal.App.2d 242, 40 P.2d 846; cases collected in 84 A.L.R. 55; in Prosser on Torts (West Pub. Co., 1941) 976–1013; note in 24 Calif. L.Rev. 208. See also Sayre, "Inducing Breach of Contract," 36 Harv.L.Rev. 663; Carpenter, "Interference with Contractual Relations," 41 Harv.L.Rev. 728; Restatement of Torts, Section 766.

■ A complaint is required to state "a short and plain statement of the claim showing that the pleader is entitled to relief." If the complaint states any claim on which the plaintiff might possibly recover, the complaint should not be dismissed without a trial or motion for summary judgment. Dioguardi v. Durning, 2 Cir., 139 F.2d 774, 775. Only if it is certain that plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim should the complaint be dismissed for failure to state a cause for which relief can be granted. Dennis v. Village of Tonka Bay, 8 Cir., 151 F.2d 411.

The allegations of the complaint do not describe specific acts on the part of defendants which induced breaches of contract.

2. An action for damages because of alleged conspiracy by defendants to restrain trade, contrary to the Sherman Act, also constitutes an action in tort. Rector v. Warner Bros. Pictures, D.C. S.D.Cal., 102 F.Supp. 263, 264, and authorities there cited.

3. Plaintiff manufacturer, in that case, sought to enjoin defendant retailer from selling products made by plaintiff at prices less than the minimum retail prices stipulated by plaintiff (in contracts with third-party retailers). The sales complained of occurred in the State of Louisiana. The Louisiana Fair Trade Act, La.Gen.Stat. Secs. 9809.1 et seq.,

LSA–R.S. 51:391 et seq., authorized a manufacturer of products which bear his trademark, brand or name, and which are in free and open competition with other products of the same general class produced by others, to stipulate, by contract with retailers, minimum prices for the resale of such products. The Louisiana Fair Trade Act further declared that it was unfair competition, actionable at the suit of any person damaged thereby, for any person to wilfully and knowingly advertise, offer for sale or sell any product at less than the price stipulated in any contract authorized by the Act, regardless of whether the person so acting was a party to such a contract or not.

Also, there is only one specific contractual relationship referred to by name as being a contract, the breach of which was induced by defendants.[4]

 Defendants have not filed a motion for a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure.[5] Moreover, all that Rule 8(a) requires of a complaint is that it indicate generally the type of litigation that is involved; and a generalized summary of the case that affords fair notice is sufficient. Securities and Exchange Comm. v. Timetrust, Inc., D.C.N.D.Cal., 28 F.Supp. 34, 41. The complaint, in charging defendants with having induced the breach of contracts between plaintiff and third persons, alleges that defendants had knowledge of such contracts. The rule is that a complaint does not require amplification by a bill of particulars where the information sought to be obtained by such device is peculiarly within the knowledge of the defendant. Kraft Corrugated Containers, Inc., v. Trumbull Asphalt Co., D.C.N.J., 31 F.Supp. 314, 316; William F. Luebke Co. v. Manhardt, D.C. E.D.Wis., 37 F.Supp. 13, 15; Porter v. Shoemaker, D.C.M.D.Pa., 6 F.R.D. 438, 441. From what sources defendants obtained the Sunbeam products which they offered for sale and sold is information peculiarly within the knowledge of defendants. Under the circumstances the complaint is sufficient to afford them adequate notice as to what claim for relief plaintiff asserts against them.

Defendants contend that if their actions have induced breaches of plaintiff's contracts, such interference was justified, and therefore not tortious. This conclusion rests upon the assertion that plaintiff's contracts were illegal under the antitrust laws of the United States—more particularly under Section 1 of the Sherman Act, 26 Stat. 209, 15 U.S.C.A. § 1.

Congress at its last session enacted the McGuire Act,[6] which amended the Federal Trade Commission Act, 38 Stat. 719, 15 U.S. C.A. § 45. The McGuire Act specifically exempts from the prohibitions of the Federal Antitrust Acts contracts containing provisions such as those in plaintiff's instant contracts.[7] This amendment was approved on July 14, 1952 and settles the present law, but does not answer the question of whether or not plaintiff's contracts were legal before its enactment.

 Since the passage of the Miller-Tydings Act, 50 Stat. 693, 15 U.S.C.A. § 1 in 1937 there have been exempted from the operation of the Sherman Act contracts or agreements prescribing minimum prices for the resale of specified commodities when contracts or agreements of that description are lawful as applied to intrastate transac-

---

4. The alleged contract was between plaintiff and one, Richard Nossoff, doing business under the fictitious names of Richard's Furniture and Appliance Co., Richard's Furniture Co., and Trend Furniture Co.

5. "Motions filed under Rule 12(e), Rules of Civil Procedure, 28 U.S.C.A. following section 723c, will be granted only where their object is to amplify pleadings which are so insufficient that either an answer cannot be prepared in response thereto or the Defendant cannot prepare for trial." Pearson v. Hershey Creamery Co., D.C.M.D.Pa., 30 F.Supp. 82, 83.

6. Public Law 542, approved July 14, 1952, 82nd Congress, 2nd Session.

7. "Sec. 2. Section 5(a) of the Federal Trade Commission Act as amended, is hereby amended to read as follows: * * *.

"'(2) Nothing contained in this Act or in any of the Antitrust Acts shall render unlawful any contracts or agreements prescribing minimum or stipulated prices, or requiring a vendee to enter into contracts or agreements prescribing minimum or stipulated prices, for the resale of a commodity which bears, or the label or container of which bears, the trade-mark, brand, or name of the producer or distributor of such commodity and which is in free and open competition with commodities of the same general class produced or distributed by others, when contracts or agreements of that description are lawful as applied to intrastate transactions under any statute, law, or public policy now or hereafter in effect in any State, Territory, or the District of Columbia in which such resale is to be made, or to which the commodity is to be transported for such resale.'"

tions under local law.[8] Schwegmann Brothers v. Calvert Distillers Corp., supra. Resale price maintenance contracts are legalized by statute in every state in the United States except Missouri, Texas and Vermont. Plaintiff's contracts, in express terms, are limited to sales within states where agreements prescribing minimum resale prices are lawful. Therefore, no illegality exists as to the provisions of plaintiff's contracts wherein the party contracting with plaintiff, whether wholesaler or retailer, binds himself to resell Sunbeam products at minimum prices prescribed by plaintiff.

Defendants argue that it is illegal for plaintiff to include in its contracts with wholesalers that provision wherein the wholesaler promises that he will secure from all buyers of Sunbeam products a promise that such buyer will not resell such Sunbeam products for prices less than the minimum retail prices prescribed by plaintiff. In support of this argument they rely upon Masters v. Sunbeam, D.C.S.D.N.Y., 112 F.Supp. 268. That case held that the Sunbeam contract which is here in question was illegal because the resale restriction provision of such contract was not within the scope of the Miller-Tydings Act. The court in that case reasoned that the resale restriction provision was not within the exemption to Sherman Act illegality created by the Miller-Tydings Act because:

(1) The Supreme Court, in the Schwegmann case, supra [341 U.S. 384, 71 S.Ct. 747], stated that the Miller-Tydings Act granted only "a limited immunity"; and the Miller-Tydings Act does not expressly authorize contract provisions restricting the resale of a commodity to only those who have signed resale price maintenance agreements.

(2) The legislative history of the Miller-Tydings Act reveals that when it was first introduced, in bill form, its language creating the exemption from the Sherman Act expressly referred to "other conditions for the resale of a commodity," as well as to "contracts or agreements prescribing minimum prices;" whereas, when enacted as a statute, the language referring to "other conditions" was omitted.

(3) The McGuire Act must be construed to have changed the law with respect to the resale restriction provision, since it effected a change with respect to the authorization of enforcement of State Fair Trade laws against non-signers of resale price maintenance agreements and with respect to the authorization of agreements prescribing stipulated, as well as minimum, prices.

(4) The legislative history of the McGuire Act indicates that its effect was to change the law with respect to resale restriction provisions.

It is true that the Schwegmann case, supra, held that the Miller-Tydings Act created but "a limited immunity" to the proscriptions of the Sherman Act. But that case did not hold that the Miller-Tydings Act exempted from the operation of the Sherman Act only the prescribing of minimum prices between the parties to the contract. Rather than deciding what the exemption created by the Miller-Tydings Act did include, the Schwegmann case, supra, decided what that exemption did not include, to wit: requiring non-signers of resale price agreements to adhere to retail prices prescribed by a manufacturer who had entered into such price fixing agreements with other distributors and retailers.

■ The only limitation which plaintiff's contracts place upon a distributor's market for the resale of Sunbeam products is that of restricting such market to such vendees as will agree to resell Sunbeam products at not less than the prescribed minimum retail prices. This limitation, imposed by contract, fits within the exemption defined by

---

8. Resale price maintenance is allowed only as respects commodities which bear, or the label or container of which bear, the trademark, brand or name of the producer or distributor and which are in free and open competition with commodities of the same general class produced or distributed by others. Excluded are agreements between manufacturers, between producers, between wholesalers, between brokers, between factors, between retailers or between persons, firms or corporations in competition with each other.

the Miller-Tydings Act. Such a contract is one "prescribing minimum * * * prices, for the resale of a commodity". The contract in question prescribes two resale prices, one wholesale and the other retail. The only way in which plaintiff could maintain its existing distribution system, which channels Sunbeam products to the retailer through the middleman distributor, and at the same time insure that its minimum prices would be maintained by all retailers who sell Sunbeam products, was to bind the vendee distributors with such a provision. It was the very purpose of the Miller-Tydings Act to allow a manufacturer whose products meet the statutory requirements [9] to fix the prices at which those products would be resold to the public. There is no indication in the Miller-Tydings Act itself or in its legislative history that Congress intended to require a manufacturer to sell directly to retailers, or otherwise alter established systems of distribution, in order to avail himself of the benefits of the Act. Since it is determined that the resale restriction provision falls within the meaning of the statutory phrase, "contracts or agreements prescribing minimum prices for the resale of a commodity", the fact that the "other condition" language was omitted from the statute is immaterial.

Plaintiff's contracts do not involve "horizontal" price fixing. That type of price fixing involves contracting parties who are on the same level of distribution. The contracts here involved were between a manufacturer on one side and either distributors or retailers on the other. Nor is the legality of the contracts influenced by the fact that their use may eliminate price competition at the retail level of distribution. Such a result is lawful if a distributor successfully negotiates individual "vertical" agreements with all his retailers. Schwegmann Brothers v. Calvert Distillers Corp., supra, 341 U.S. at page 389, 71 S.Ct. 745.

Congressional policy with regard to resale price maintenance contracts underwent some changes in statutory expression by virtue of the enactment of the McGuire Act. Subdivision (2) of Section 5(a) of the Federal Trade Commission Act, as amended by the McGuire Act, reads:

"(2) Nothing contained in this Act or in any of the Antitrust Acts shall render unlawful any contracts or agreements prescribing minimum or stipulated prices, or requiring a vendee to enter into contracts or agreements prescribing minimum or stipulated prices, for the resale of a commodity * * *."

Prior to the enactment of the McGuire Act the statutory pronouncement applicable to such contracts was found in the Miller-Tydings Act, and read:

"*Provided*, That nothing contained in sections 1–7 of this title shall render illegal, contracts or agreements prescribing minimum prices for the resale of a commodity * * *."

The language of the new statute which exempts from illegality contracts or agreements "requiring a vendee to enter into contracts or agreements prescribing minimum * * * prices" was merely a clarification of existing law, rather than a change.[10] The McGuire Act has been held constitutional. Eli Lilly & Co. v. Schwegmann Bros., D.C.E.D.La., 109 F.Supp. 269.

The mere fact that one or more provisions of the McGuire Act changed the law does not mean that all of its provisions produced such an effect. That Act, in terms, exempts from the prohibitions of the Antitrust laws "contracts or agreements prescribing minimum or stipulated prices". Granted that the addition of the word, "stipulated" produced a change, but the use of the other words in that phrase merely reenacted a provision of the Miller-Tydings Act and produced no change. And, as

---

9. The product itself, or its label or container, must bear the trademark, brand, or name of the producer (or distributor), and the product must be in free and open competition with commodities of the same general class produced or distributed by others. 15 U.S.C.A. § 1.

10. Toward substantiating this view, see report of James M. Mead, Chairman, Federal Trade Commission, submitted to Senate Committee on Interstate and Foreign Commerce, May 21, 1952, U.S.Code Congressional and Administrative News 1952, p. 2182.

pointed out above, the phrase, "contracts or agreements prescribing minimum prices for the resale of a commodity", includes within its meaning agreements requiring the vendee to resell only to those who agree to maintain the minimum prices prescribed by the manufacturer.

The court in the Masters case, supra, relies in part upon language from House Report No. 1437, 82nd Congress, 2d Session, as supporting its view that the McGuire Act effected a change by virtue of the express language sanctioning resale restrictive provisions. The language cited by that court from the report is as follows:

" 'This paragraph differs from the Miller-Tydings Act in two respects. First, it includes a provision expressly covering contracts which prescribe 'stipulated' prices; such contracts are not expressly covered by the Miller-Tydings Act. Second, it includes a provision expressly covering a contract which requires a vendee to enter into another contract prescribing a minimum or stipulated price; such a contract is not expressly covered by the Miller-Tydings Act' " 112 F.Supp. 271.

As was recognized by the court in the Masters case, supra, this analysis "first states that these two provisions differ from the Miller-Tydings Amendment, and later qualifies this by the phrase 'not expressly covered by the Miller-Tydings Act.' " This limiting language gives the statement the meaning that the difference between the McGuire Act and the Miller-Tydings Act is that certain provisions are *expressly* covered by the former, whereas in the latter those provisions were not expressed in specific terms.

It should be noted that another recent case from the same judicial district in which the Masters case, supra, was decided is at variance with it. Cat's Paw Rubber Co. v. Barlo Leather & Findings Co., D.C. S.D.N.Y., 12 F.R.D. 119, by implication held that contracts containing a restrictive provision of the sort here under consideration were legal. That case, in denying the defendants' motion to dismiss plaintiff's complaint for tortious interference with its contractual relationships, must necessarily have decided that the contracts before it were legal, for an action such as was plaintiff's in that case will lie only if the contract as to which it is alleged that there has been interference is not illegal as in restraint of trade. See Dr. Miles Medical Co. v. John D. Park & Sons Co., 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502; Ford Motor Co. v. Union Motor Sales Co., 6 Cir., 244 F. 156; Prosser on Torts (West Pub. Co., 1941) 980.

■ Plaintiff's contracts are not in themselves illegal. Nor does it appear from the face of the complaint that they have been used as part of an illegal price-fixing scheme. Since defendants raise no other ground as a justification for interference with plaintiff's contracts and since the allegations of the complaint are otherwise sufficient to set out all the elements of a tort committed upon plaintiff by defendants, there is stated a cause for which relief can be granted.

The complaint alleges a second "cause of action" under the antitrust laws of the United States, charging that defendants have, in violation of such laws, agreed and conspired to restrain and monopolize trade in Sunbeam products in nine cities located in three different states in which defendants operate. In this connection plaintiff seeks relief by way of treble damages in the amount of $750,000 and an injunction prohibiting defendants from restraining or monopolizing trade in Sunbeam products.

■ The sole statutory authorizations for such a proceeding by individual plaintiffs are found in Sections 15 [11] and 26 [12]

11. Section 7 of the Sherman Act, 15 U.S. C.A. § 15 note, and Section 4 of the Clayton Act, 15 U.S.C.A. § 15, provide that any person who is injured in his business or property by reason of violation of the antitrust laws may sue in the federal courts and recover treble damages and the costs of suit, including a reasonable attorney's fee. Section 4 of the Clayton Act is later in date, and thus technically repeals Section 7 of the Sherman Act, but it is in effect the same, having the same force.

12. Under Section 16 of the Clayton Act,

of Title 15 of the United States Code Annotated. At common law restraints of trade which tended to raise prices or otherwise take from buyers or consumers the advantages accruing from free competition in the markets did not give rise to an actionable wrong. Shotkin v. General Electric Co., 10 Cir., 171 F.2d 236, 237, 238.

■ To prevail in a treble damage action under these sections of the antitrust statutes, a private litigant must allege and prove: (1) a violation of the antitrust laws of the United States, and (2) damage to the plaintiff proximately resulting from the acts and conduct which constitute the violation. Twin Ports Oil Co. v. Pure Oil Co., 8 Cir., 119 F.2d 747; Northwestern Oil Co. v. Socony-Vacuum Oil Co., 7 Cir., 138 F.2d 967; Clark Oil Co. v. Phillips Petroleum Co., 8 Cir., 148 F.2d 580, certiorari denied 326 U.S. 734, 66 S.Ct. 42, 90 L.Ed. 437; La Chapelle v. United Shoe Machinery Corp., D.C.Mass., 90 F.Supp. 721; Myers v. Shell Oil Co., D.C.S.D.Cal., 96 F.Supp. 670.

The complaint alleges that defendants conspired to restrain and monopolize the trade in Sunbeam products in the respective cities where defendants operate stores by the device of cutting prices on such products. It is further alleged that as the result of such price cutting some retail stores who compete with defendants have discontinued the sale of Sunbeam products.

Unless there has been a violation of the anti-trust laws no action will lie to recover damages or for injunctive relief. Virtue v. Creamery Package Mfg. Co., 227 U.S. 8, 33 S.Ct. 202, 57 L.Ed. 393; Dueber Watch-Case Mfg. Co. v. E. Howard Watch & Clock Co., 2 Cir., 66 F. 637; Alexander Milburn Co. v. Union Carbide & Carbon

Corp., 4 Cir., 15 F.2d 678; Mitchell Woodbury Corp. v. Albert Pick-Barth Co., D.C. Mass., 36 F.2d 974, reversed on other grounds, 1 Cir., 41 F.2d 148; Neumann v. Bastian-Blessing Co., D.C.N.D.Ill., 71 F. Supp. 803.

Plaintiff contends that a conspiracy which had as its purpose or inevitable effect the establishment of commercial dominance in the sale of Sunbeam products in certain cities would violate Sections 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1–2. The Sunbeam products involved include: an electric coffee maker, an electric food mixer, an electric waffle baker, an electric iron, an electric shaver and an electric toaster. Each of these products competes for the favor of consumers with other products of the same general class which are made by other manufacturers. The complaint itself lists the many competitors of each item.[13] It is essential to plaintiff's claim for relief based on tortious interference with its contracts that its products be "in free and open competition with commodities of the same general class produced or distributed by others." Otherwise, those contracts would not be saved, by the Miller-Tydings Act or the McGuire Act, from themselves violating the Sherman Act. Thus, plaintiff's allegation that Sunbeam products are in free and open competition with other products of the same general class produced or distributed by others is the very heart of its complaint.

■ "It is only when price cutting extends to destruction or unreasonable restraint of competition or taking losses in order to attain an ultimate monopoly or partial monopoly that the law is violated." United States v. New York Great A. & P.

---

15 U.S.C.A. § 26, any person is entitled to sue for injunctive relief against threatened loss or damage by reason of a violation of the antitrust laws.

13. Sunbeam manufactures an ordinary electric iron and an electric steam iron, both of which compete with 37 other and different irons. Sunbeam's electric coffee maker competes with 23 other and different electric coffee makers. Sunbeam's electric food mixer competes with 14 other and different electric food mixers. The Sunbeam electric shaver competes with 11 other and different electric shavers. The Sunbeam electric toaster competes with 21 other and different electric toasters. The Sunbeam electric waffle baker competes with 8 other and different electric waffle bakers.

Tea Co., D.C., 67 F.Supp. 626, 642, affirmed, 7 Cir., 173 F.2d 79. The Sherman Act has no concern with prices, but looks solely to competition and to the giving of competition full play, by making illegal any effort at restriction upon competition. United States v. New York Great A. & P. Co., supra, 67 F.Supp. 636.

The situation portrayed by the complaint is not one which violates the Sherman Act. The end sought by the Sherman Act was the prevention of restraints to free competition in business and commercial transactions which tended to restrict production, raise prices or otherwise control the market to the detriment of purchasers or consumers of goods and services. Apex Hosiery Co. v. Leader, 310 U.S. 469, 500–501, 60 S.Ct. 982, 84 L.Ed. 1311. See also Balian Ice Cream Co. v. Arden Farms Co., D.C.S.D.Cal., 94 F.Supp. 796; F & A Ice Cream Co. v. Arden Farms Co., D.C.S.D.Cal., 98 F.Supp. 180; United States v. Richfield Oil Corp., D.C.S.D.Cal., 99 F.Supp. 280. So long as Sunbeam products are in free and open competition with other products of the same general class, action which affects Sunbeam products alone will not operate to the detriment of purchasers or consumers of such class of products. For example, plaintiff himself states that the Sunbeam Coffeemaster is in free and open competition with twenty-three other electric coffeemakers which are produced by other manufacturers. So long as this competition continues, purchasers and consumers will be protected from the fixing of prices or the restriction of production of electric coffeemakers and from control of the market in such appliances by the operation of that competition.

To establish a cause for relief by reason of a violation of the antitrust laws of the United States by defendant, an individual plaintiff must allege that such violation was the proximate cause of special injury to his business or property, as distinguished from injury to other persons or to the public. Maltz v. Sax, 7 Cir., 134 F.2d 2, 5, certiorari denied 319 U.S. 772, 63 S.Ct. 1437, 87 L.Ed. 1720; Beegle v. Thomson, 7 Cir., 138 F.2d 875, 881, certiorari denied Beegle v. Thompson 322 U.S. 743, 64 S.Ct. 1143, 88 L.Ed. 1576. It is not enough to allege something forbidden by the antitrust laws and to claim general damage resulting therefrom, American Sea Green Slate Co. v. O'Halloran, 2 Cir., 229 F. 77, 79; but the complaint asserting a statutory cause of action must affirmatively show the nature and character of the injury suffered, and that it was an injury to the plaintiff's business or property within the meaning of the statute. Noyes v. Parsons, 9 Cir., 245 F. 689, 695–696; Conference of Studio Unions v. Loew's Inc., 9 Cir., 193 F.2d 51, 54.[14]

Plaintiff alleges that defendants cut prices on Sunbeam products and as a consequence sold more of such products than did competing retailers in the specified cities. Even though these allegations might be sufficient to show damage as to retailers who compete with defendants for trade in Sunbeam products, they fail to show damage to plaintiff. The only allegations which tend to connect defendants' acts with possible damage to plaintiff are: (1) that some retailers who compete with defendants in the retail sale of Sunbeam products failed to advertise Sunbeam products during the period that defendants were

14. See also: Straus v. Victor Talking Mach. Co., 2 Cir., 297 F. 791; Twin Ports Oil Co. v. Pure Oil Co., 8 Cir., 119 F.2d 747; Weeks v. Bareco Oil Co., 7 Cir., 125 F.2d 84; Farmers Co-op. Oil Co. v. Socony-Vacuum Oil Co., 8 Cir., 133 F.2d 101; Northwestern Oil Co. v. Socony-Vacuum Oil Co., 7 Cir., 138 F. 2d 967; Turner Glass Corp. v. Hartford-Empire Co., 7 Cir., 173 F.2d 49; Kainz v. Anheuser-Busch, Inc., 7 Cir., 194 F.2d 737; Miller Oil Co. v. Socony-Vacuum Oil Co., D.C.E.D.Mo., 37 F.Supp. 831; Westor Theatres v. Warner Bros. Pictures, D.C.N.J., 41 F.Supp. 757; McCain v. Socony-Vacuum Oil Co., D.C.W. D.Mo., 64 F.Supp. 12; Tivoli Realty v. Paramount Pictures, D.C.Del., 80 F. Supp. 800; Alden-Rochelle, Inc., v. American Soc. of C., A. & P., D.C.S.D.N.Y., 80 F.Supp. 888; Revere Camera Co. v. Eastman Kodak Co., D.C.N.D.Ill., 81 F. Supp. 325; Package Closure Corp. v. Sealright Co., D.C.S.D.N.Y., 4 F.R.D. 114.

advertising and selling such products at cut prices; (2) that some such competing retailers have discontinued the handling of Sunbeam products.

The complaint indicates on its face that defendants widely advertised Sunbeam products during the period that they pursued their price cutting tactics. Thus plaintiff cannot reasonably say that it was damaged by reason of not having its products advertised in the specified cities during the period of defendants' price cutting. The complaint further indicates that defendants sold large volumes of Sunbeam products during the period of price cutting. It is purely conjectural as to whether or not plaintiff was damaged by having some retailers discontinue the sale of Sunbeam products while at the same time defendants sold large quantities thereof. Acts which have a tendency to create a monopoly in the retail sale of Sunbeam products in only a few communities in the entire United States could hardly damage plaintiff so long as plaintiff does not itself retail such products.[15]

In order for an individual plaintiff to show injury "by reason" of anything forbidden in the antitrust laws he must show that he is within the area of the economy which is endangered by a breakdown of competitive conditions in a particular industry. Conference of Studio Unions v. Loew's, Inc., supra, 193 F.2d 55. Damage to an individual resulting from violations of the antitrust laws must be alleged in facts from which the existence of such damage is logically and legally inferable. Keogh v. Chicago & N. W. R. Co., 260 U.S. 156, 165, 43 S.Ct. 47, 67 L.Ed 183.

Though the complaint itself does not allege that defendants' acts of price cutting violated the Robinson Patman Act, 15 U.S.C.A. § 13a, this contention has been raised by plaintiff in the course of argument. That Act provides, in pertinent part, as follows:

"It shall be unlawful for any person engaged in commerce * * * to sell, or contract to sell, goods at unreasonably low prices for the purpose of destroying competition or eliminating a competitor."

The complaint does not allege that plaintiff is a competitor of defendants in the retail sale of Sunbeam products or in any other field of commercial endeavor; in fact it indicates that the converse is true. Hence, even were it possible to view defendants' acts as a violation of the Robinson Patman Act, there is no basis in the complaint for inferring that such violation caused damage to plaintiff.

Without actual damage to plaintiff there can be no cause for the granting of relief. Maltz v. Sax, supra. Therefore, the purported "second cause of action" should be dismissed.

Plaintiff's alleged "third cause of action" sounds in trademark infringement and unfair competition. It is the theory of the complaint that defendants' acts in advertising and selling Sunbeam products at less than the prices stipulated by plaintiff accomplished an unlawful appropriation of plaintiff's property rights existing in the trademarks and tradenames used in the advertising and marketing of Sunbeam products.

To support the conclusion that an appropriation of property rights in trademarks has been effected, it is alleged that defendants have used plaintiff's trademarks as an aid in selling "headache remedies, nostrums, tonics, sundries, cigars, cameras, fountain pens, toys and defendants' vast array of other merchandise which is not manufactured by Sunbeam at all." The aid in selling other goods which defendants gain from the advertising and sale of Sunbeam products at cut prices—as outlined in the complaint—is that customers are attracted into defendants' stores by the desire to purchase Sunbeam products at bargain prices and that while in defendants' stores these customers purchase other products which are not manufactured by Sunbeam.

15. For an example of a manufacturer who also retailed his own products in competition with other retailers see Jarrett v. Pittsburgh Plate Glass Co., 5 Cir., 131 F.2d 674.

Plaintiff contends that the owner of trademark rights in the product which he manufactures can require any retailer not specifically authorized to use such trademark, who subsequently acquires a clear title to any of such products, to remove from such products the trademark thereto attached and to refrain from using the trademark in connection with the advertising, offering for sale or sale of such products. Such a doctrine, however, is not a part of the law.[16]

 A trademark symbolizes business good will. Beech-Nut Packing Co. v. P. Lorillard Co., 273 U.S. 629, 632, 47 S.Ct. 481, 71 L.Ed. 810; Old Dearborn Distributing Co. v. Seagram Distillers Corp., 299 U. S. 183, 194–195, 57 S.Ct. 139, 81 L.Ed. 109; 52 Am.Jur., Trademarks, etc., § 2, p. 508. There is no property in a trademark apart from the business or trade in connection with which it is employed. United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 97, 39 S.Ct. 48, 63 L.Ed. 141; Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 413–414, 36 S.Ct. 357, 60 L.Ed. 713. The law of trademarks is but a part of the broader law of unfair competition, the general purpose of which is to prevent one person from passing off his goods or his business as the goods or business of another. American Steel Foundries v. Robertson, 269 U.S. 372, 380, 46 S.Ct. 160, 70 L. Ed. 317.

 A trademark only gives the owner thereof the right to prohibit its use to deceive the public in a manner which injures his goodwill. Prestonettes, Inc., v. Coty, 264 U.S. 359, 44 S.Ct. 350, 68 L.Ed. 731; Champion Spark Plug Co. v. Sanders, 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386. In the Prestonettes case, supra, Mr. Justice Holmes, 264 U.S. at page 368, 44 S.Ct. at page 351, said: "A trade-mark only gives the right to prohibit the use of it so far as to protect the owner's good will against the sale of another's product as his. * * * When the mark is used in a way that does not deceive the public we see no such sanctity in the word as to prevent its being used to tell the truth. It is not taboo."

The allegations of the complaint indicate no more than that defendants told the truth in connection with the use of plaintiff's trademarks. The products which defendants advertised and sold as Sunbeam products were in fact Sunbeam products. There is no allegation that other products not manufactured by Sunbeam were sold in connection with Sunbeam products with such combination being sold as a single unit of merchandise.[17]

 All that is here alleged is that persons attracted into defendants' stores by the advertising or display of Sunbeam products, offered at bargain prices, may, while in such stores, buy other products not made by Sunbeam. The probability of this occurrence is not higher than that of the converse situation—where the persons going into defendants' stores to purchase "headache remedies, tonics, etc." become interested in and purchase Sunbeam products while in such stores. No credibility whatsoever can be given to the argument that because members of the public see Sunbeam products advertised by or displayed in a retail store they will be deceived into believing every article of merchandise in the store is manufactured by Sunbeam.[18]

16. To this effect, see Chafee, "Equitable Servitudes on Chattels," 41 Harv.L.R. 945.

17. In this connection see Sears Roebuck & Co. v. Federal Trade Comm., 7 Cir., 258 F. 307, 6 A.L.R. 358, wherein it was held that it was an act of unfair competition for Sears Roebuck & Co. to offer for sale a limited amount of sugar at a very low price in connection with a required purchase of other commodities.

18. Only occasional cases of confusion or thoughtless errors by very inattentive purchasers are of little or no significance in determining whether sufficient confusion of the public exists to justify a finding of trademark infringement. Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 121, 59 S.Ct. 109, 83 L.Ed. 73; Quaker Oats Co. v. General Mills, 7 Cir., 134 F.2d 429, 432; Valvoline Oil Co. v. Havoline Oil Co., D.C.S.D.N.Y., 211 F. 189, 194. See also Pennzoil Co. v. Crown Central Petroleum Corp., D.C.Md., 50 F. Supp. 891, 900; Restatement, Torts, § 728, Comment A.

The complaint fails to allege any deception of the public which could reasonably be expected to injure plaintiff's goodwill.[19] There has been no actionable interference with its trademark rights. Thus, the "third cause of action" is dismissed for failure to state a cause for which relief can be granted.

The alternative ground upon which defendants move to dismiss or to strike the complaint and the causes of action under it is that of failure to comply with the requirements of Rule 8 of the Federal Rules of Civil Procedure. Subdivision (a)(2) of Rule 8 requires that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," whereas subdivision (e)(1) demands that each averment thereof be "simple, concise, and direct."

There are cases which have held complaints to violate subdivisions (a)(2) and (e)(1) of Rule 8 by reason of being needlessly long, repetitious, prolix, redundant and confusing. I Barron and Holtzoff, Federal Practice and Procedure, § 255, p. 446. However, the cases recognize that the proper length of a pleading depends upon the type of case involved. Fleming v. Dierks Lumber & Coal Co., D.C.Ark., 39 F.Supp. 237; Rivoli Operating Corp. v. Loew's, Inc., D.C.W.D.N.Y., 7 F.R.D. 219. Matter will not be stricken from a pleading unless it is clear that such matter can have no possible bearing upon the subject matter of the litigation; and redundant or immaterial allegations need not be stricken if their presence cannot prejudice the adverse party. Bank of Nova Scotia v. San Miguel, D.C.P.R., 9 F.R.D. 171, 178. Where no harm will result from immaterial matter not affecting the substance, courts should hesitate to disturb a pleading. Securities and Exchange Comm. v. Timetrust, Inc., supra, 28 F.Supp. 44.

The instant complaint consists of 34 printed legal size pages and 35 pages of exhibits. But it is the substance of the pleadings, not the form, which determines whether matter should be stricken therefrom. Securities and Exchange Comm. v. Timetrust, Inc., supra, 28 F. Supp. 44. There is no impertinent or scandalous matter in the complaint, nor does any of the matter contained therein appear, on its face, to be prejudicial to the defendants. Therefore the motion to strike is denied.

Defendant Theodore H. Zimmerman has moved the court to quash the service of summons and complaint heretofore made upon him. Service was made upon one Glynn E. Tucker, individually, and as an officer of Skaggs Payless Drug Stores, a corporation, in Oakland, California, upon the claim that he and it were the agents of the defendant Theodore H. Zimmerman, who resides in Tacoma, Washington. Zimmerman has filed, with his motion to quash, his affidavit stating as a fact that neither Tucker nor Skaggs Payless Drug Stores was or is his agent. Also filed was the affidavit of Glynn E. Tucker, the person upon whom service was made, stating that neither affiant nor Skaggs Payless Drug Stores was or is the agent of Theodore H. Zimmerman.

Plaintiff contends that the allegations of the complaint controvert these affidavits. Zimmerman's name is found nowhere in the complaint except in the caption. The only other reference in which Zimmerman could be included in the complaint is one which includes "each and all of the defendants" and which is made upon information and belief.[20] This is insufficient

---

19. For an example of the sort of deception of the public which does give rise to a right of action see Paramount Pictures v. Leader Press, 10 Cir., 106 F.2d 229.

20. Paragraph 2, page 2, of the Complaint:
"* * * Upon information and belief, that each and all of the defendants are affiliated and associated with each other in intrastate and interstate commerce in several states of the United States, owning and operating a chain of retail drug and variety stores, each of which stores is identified by the name Payless Drug Stores or by some variant thereof using the name 'Payless' or 'Pay Less'.
"Defendant Skaggs Payless Drug Stores has its principal place of business in the County of Alameda, State of California. On information and belief, that said defendant Skaggs Payless Drug

to controvert the positive statements of these affidavits.[21]

Rule 4(d) of the Federal Rules of Civil Procedure sets forth how service of summons and complaint may be made upon a defendant. It includes the following:

"(1) Upon an individual other than an infant or an incompetent person, * * * by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process."

█ Where undisputed evidence shows that the person upon whom process was served is not the agent of the defendant and is not authorized to receive service of process issued against such defendant, the motion to quash service and to dismiss the defendant from the action should be granted. Thomas v. Furness, 9 Cir., 171 F.2d 434, certiorari denied 337 U.S. 960, 69 S.Ct. 1522, 93 L.Ed. 1759. Since the statements in the affidavits, to the effect that neither Glynn E. Tucker nor Skaggs Payless Drug Stores was the agent of Theodore H. Zimmerman, are not directly controverted, there is no issue of fact before the court. Accordingly, defendant Zimmerman's motion to quash service of summons and complaint and to be dismissed from the action is granted.

Theodore H. Zimmerman moves to quash the notice to take his deposition upon the ground that such notice does not comply with the Federal Rules of Civil Procedure. Service of the notice to take Zimmerman's deposition was made by mailing copies of such notice to his attorneys in Tacoma, Washington and San Jose, California. The notice specified the office of plaintiff's attorneys in San Francisco, California, as the place for taking the deposition, and specified that it should be taken upon oral examination.

█ Rule 26(a) of the Federal Rules of Civil Procedure provides that a party may take the deposition of any person whether such person is also a party or not. If the person to be examined is not a party and does not consent to attend, his attendance must be enforced by means of a subpoena under Rule 45(d). The effect of quashing the service upon Zimmerman and of dismissing him from the action is to establish that he is not a party to the action. Therefore, mere notice to take his deposition is insufficient to compel his attendance for that purpose. In order to acomplish that result it will be necessary to serve Zimmerman with a subpoena.

The notice heretofore served upon Zimmerman's attorneys does not comply with the requirements of Rule 45(d).[22] There-

---

Stores has there at all times acted and now acts as the authorized agent for all other defendants in all the matters and conduct herein complained of, including, but not limited to, the inducing of breaches of contract as hereinafter alleged, and that, accordingly, all other defendants have done and now do business in the County of Alameda, State of California, at least with respect to said matters and conduct."

21. The affidavits of Theodore H. Zimmerman and of Glynn E. Tucker state as a fact that neither Tucker nor the Skaggs Payless Drug Stores was or is the agent of defendant Zimmerman.

22. Rule 45(d) of the Federal Rules of Civil Procedure provides:
"(1) Proof of service of a notice to take a deposition as provided in Rules 30(a) and 31(a) constitutes a sufficient authorization for the issuance by the clerk of the district court for the district in which the deposition is to be

taken of subpoenas for the persons named or described therein. The subpoena may command the person to whom it is directed to produce designated books, papers, documents, or tangible things which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by Rule 26(b), but in that event the subpoena will be subject to the provisions of subdivision (b) of Rule 30 and subdivision (b) of this Rule 45.
"(2) A resident of the district in which the deposition is to be taken may be required to attend an examination only in the county wherein he resides or is employed on transacts his business in person, or at such other convenient place as is fixed by an order of court. A nonresident of the district may be required to attend only in the county wherein he is served with a subpoena, or within 40 miles from the place of service, or at such other convenient place as is fixed by an order of court."

fore, the service of such notice upon Zimmerman is quashed. But this is without prejudice to plaintiff's right to subsequently serve upon Zimmerman a properly framed notice. Upon proof of service of such notice plaintiff may secure from a district court a subpoena to compel Zimmerman to submit to the taking of his deposition.[23]

■ Zimmerman's remaining motion is to quash service upon him of the order to show cause. As indicated above, this court has not acquired jurisdiction over the person of Zimmerman. For that reason the order to show cause should be discharged as to him. The temporary restraining order issued by this court on November 30, 1951 has expired of its own terms, and no action is necessary to relieve Zimmerman of its restrictions.

The only remaining question is the right of plaintiff to injunctive relief. As already indicated, the only claim for relief adequately stated by the complaint is that concerning tortious interference with plaintiff's contracts. Consequently, if an injunction issues, it must restrain only such acts of defendants as are likely to induce others to breach their contracts with plaintiff.

■ Injunctive relief may be had to restrain third persons from unlawfully inducing the breach of a lawful contract by one of the parties thereto when it will result in irreparable injury to the other. Oklahoma Natural Gas Corp. v. Municipal Gas Co., 10 Cir., 38 F.2d 444; Fairbanks, Morse & Co. v. Texas Electric Service Co., 5 Cir., 63 F.2d 702; Meyer v. Washington Times Co., 64 App.D.C. 218, 76 F.2d 988, certiorari denied 295 U.S. 734, 55 S.Ct. 646, 79 L.Ed. 1682; Randolph v. Missouri-Kansas-Texas R. Co., D.C.W.D. Mo., 68 F.Supp. 1007. Prior discussion has established that plaintiff's contracts are

lawful. The allegations of the complaint and the averments of the affidavit filed in support of the application for an injunction are sufficient to establish the fact that defendants have already induced persons who are parties to contracts with plaintiff to breach those contracts. The complaint and the affidavit further establish that the continuation of such conduct on the part of defendants will cause plaintiff to suffer irreparable injury. The complaint is verified, and in the absence of affidavits or other evidence to contravene the facts alleged therein, they must be accepted as true.

■ The defendants have sought to raise the defense of "unclean hands" to the granting of injunctive relief. However, equity applies the doctrine of "unclean hands" only for such violations of conscience as in some measure affects the equitable relations between the parties in respect of something brought before the court for adjudication. Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 245, 54 S.Ct. 146, 78 L.Ed. 293; Alden-Rochelle, Inc., v. American Soc. of C., A. and P., D.C.S.D.N.Y., 80 F.Supp. 888, 899. The complaint does not indicate, and defendants have made no showing, that plaintiff's conduct with respect to the contracts has been inequitable toward defendants. Since it has been determined that plaintiff's contracts are lawful and not against public policy because they are within the exemptions of the Miller-Tydings Act, the exception to the rule of the Keystone case, supra, established by the Supreme Court in Morton Salt Co. v. G. S. Suppiger, 314 U.S. 488, 490, 62 S.Ct. 402, 86 L.Ed. 363,[24] does not apply. Hence the defense of "unclean hands" is not here available to defendants.

■ Therefore, it is the decision of the court that a preliminary injunction

23. It is not necessary to obtain the subpoena from the district court in which the action is pending; any district court is authorized to issue such a subpoena upon proof of service of a notice to take a deposition in that district.

24. The court in that case held, 314 U.S. at pages 492–494, 62 S.Ct. 405–406, that

where the plaintiff's action is condemned by statute, or is against public policy, and the right sought to be vindicated is inimical to the public welfare, the defense of "unclean hands" is available, even though there is no relation between the plaintiff's "unclean hands" act and the relief sought.

should issue. It should restrain such defendants as are within the jurisdiction of the court from inducing or attempting to induce any person who is a party to one of plaintiff's so-called "fair trade" contracts from breaching such contract. It should also restrain defendants from inducing or attempting to induce any person to enter into a "fair trade" contract with plaintiff for the purpose of obtaining Sunbeam products to supply to defendants in violation of such contract.

An injunction is not for the purpose of punishing for wrongful acts already committed. White v. Sparkill Realty Corp., 280 U.S. 500, 50 S.Ct. 186, 74 L. Ed. 578; Duplex Printing Press Co. v. Deering, 254 U.S. 443, 41 S.Ct. 172, 65 L.Ed. 349, 16 A.L.R. 196. But an injunction looks to the future to prevent threatened injury. Texas Co. v. Brown, 258 U.S. 466, 42 S.Ct. 375, 66 L.Ed. 721; Standard Oil Co. (Indiana) v. United States, 283 U.S. 163, 51 S.Ct. 421, 75 L. Ed. 926; Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324. Defendants' continued sale of Sunbeam products at less than the retail price specified in plaintiff's contracts will not only permit defendants to take advantage of the tortious interference with plaintiff's contracts but it will cause persons who do have contracts with plaintiff either to breach the contract or discontinue the sale of plaintiff's products. Therefore, the injunction should restrain defendants from selling, offering to sell or advertising Sunbeam products at less than the fair trade prices for such products.

To facilitate enforcement of the preliminary injunction and to determine whether or not a permanent injunction should issue after trial, defendants should account to plaintiff as to the sources from which they obtained all Sunbeam products which they now have on hand.

Counsel for plaintiff are directed to prepare findings of fact, conclusions of law and a preliminary injunction in accordance herewith.